[NOT YET SCHEDULED FOR ORAL ARGUMENT]

**No. 25-5418**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

DISTRICT OF COLUMBIA,

*Plaintiff-Appellee,*

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, et al.,

*Defendants-Appellants.*

———————————————

On Appeal from the United States District Court
for the District of Columbia
Case No. 1:25-cv-3005, Hon. Jia M. Cobb

**Brief for Democracy Forward Foundation as
*Amicus Curiae* Supporting Appellee in Opposition to
Emergency Motion for Stay Pending Appeal**

Brian D. Netter
Bradley Girard
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

*Counsel for* Amicus Curiae

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.    Parties and *Amici*.** All parties, intervenors, and amici appearing before the district court and in this court are listed in Defendants-Appellants' Emergency Motion.

**B.    Rulings Under Review.** References to the rulings at issue appear in Defendants-Appellants' Emergency Motion.

**C.    Related Cases**. This case has not previously been before this Court or any court other than the district court. Undersigned counsel is unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

                                        */s/ Brian D. Netter*
                                        Brian D. Netter

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* Democracy Forward Foundation is a nonprofit corporation organized under the laws of the District of Columbia. It has no parent corporation, and no publicly held corporation owns any portion of it.

# TABLE OF CONTENTS

Page

Certificate as to Parties, Rulings, and Related Cases ................................... i

Corporate Disclosure Statement .................................................................. ii

Table of Authorities ................................................................................... iv

Glossary ...................................................................................................... vii

Interest of the *Amicus Curiae* ....................................................................... 1

Introduction and Summary of Argument ...................................................... 1

Argument ...................................................................................................... 3

I.    The President Requires Statutory Authorization To Deploy
      The D.C. National Guard. ................................................................... 3

II.   The President's Authority To Deploy The D.C. National Guard
      For Law-Enforcement Purposes Is Further Limited By The
      Posse Comitatus Act. .......................................................................... 5

      A.    The Constitution permits states to maintain their own
            militias, which later become the National Guard. ...................... 6

      B.    The Office of Legal Counsel adopts the legal fiction that
            the D.C. National Guard can exist as something other
            than a part of the Army. .......................................................... 9

Conclusion .................................................................................................. 12

# TABLE OF AUTHORITIES*

**Cases**                                                                                     **Page(s)**

*\*Palmore v. United States*,
  411 U.S. 389 (1973) .......................................................................... 3, 4

*\*Perpich v. Dep't of Def.*,
  496 U.S. 334 (1990) .......................................................................... 7, 8

*\*United States v. Hutchings*,
  127 F.3d 1255 (10th Cir. 1997) .................................................. 9, 10, 11

**Constitutional Provisions And Statutes**

18 U.S.C. § 1385 ................................................................................... 2, 5

Act of June 20, 1874, 18 Stat. 116 ................................................... 4

Act of Mar. 1, 1889, 25 Stat. 773 ...................................................... 4

D.C. Code
  § 5-101.03 ...................................................................................... 4
  § 49.101 ........................................................................................ 4
  § 49.102 ........................................................................................ 4
  § 49.103 ...................................................................................... 10
  § 49.104 ........................................................................................ 4
  § 49.305 ...................................................................................... 10
  § 49.409 ...................................................................................... 10

Home Rule Act of 1973, Pub. L. No. 93-198, 87 Stat. 774 ............................ 4

Organic Act of 1801, 2 Stat. 103 ...................................................... 4

Organic Act of 1871, 16 Stat. 419 ...................................................... 4

U.S. Const. art. I, § 8 .......................................................................... 3, 8

---

\* Authorities upon which we chiefly rely are marked with an asterisk.

# TABLE OF AUTHORITIES—continued

**Page(s)**

U.S. Const. art. II, § 2 ........................................................................ 8

**Other Authorities**

1 Gentile, Gian, et al., The Evolution of U.S. Military Policy from
    the Constitution to the Present (2020),
    https://perma.cc/H5EM-NGSU ........................................... 6

3 *The Debates on the Adoption of the Federal Constitution*
    (Jonathan Elliot, ed., 1863) ............................................. 7, 8

D.C. Nat'l Guard, *Establishing the Militia*,
    https://perma.cc/WT49-9ZSA ........................................... 10

Exec. Order No. 11,485, 34 Fed. Reg. 15,411 (Oct. 1, 1969) ....................... 10

Mem. for Sec'y of the Army et al. on Supervision and Control of
    the National Guard of the District of Columbia (Oct. 10,
    1969), https://perma.cc/7C7R-6GJA ................................... 10

*Mil. Support for Customs & Border Prot. Along the S. Border
    Under the Posse Comitatus Act*, 2021 WL 298369 (O.L.C.
    Jan. 19, 2021) ............................................................. 9

National Guard, *Army National Guard*, https://perma.cc/J4U6-
    J5VV........................................................................ 6

Scott, James Brown, *The Militia: Extracts from the Journals and
    Debates of the Federal Convention, the State Constitutional
    Conventions, the Congress, the Federalist, Together with
    Papers Relating to the Militia of the United States*, S. Doc.
    No. 695, 64th Cong. (1917) .............................................. 7

*The Federalist No. 25* (Alexander Hamilton) ............................... 7

*The Federalist No. 43* (James Madison) .................................... 3

**TABLE OF AUTHORITIES—continued**

**Page(s)**

*The Federalist No. 46* (James Madison) ......................................................... 7

*Use of the National Guard to Support Drug Interdiction Efforts in
the District of Columbia*, 13 Op. O.L.C. 91 (1989) ........................... 5, 9

Washington, George, *Sentiments on a Peace Establishment* (1783),
https://perma.cc/JE8Y-JLT2 ................................................................. 6

**GLOSSARY**

DCNG    District of Columbia National Guard

DFF     Democracy Forward Foundation

PCA     Posse Comitatus Act

## INTEREST OF THE *AMICUS CURIAE*[1]

Democracy Forward Foundation (DFF) is a nonprofit national legal organization that advances democracy and social progress through litigation, policy and public education, and regulatory engagement. DFF represents clients, including nonprofits, local governments, tribes, small businesses, unions, and individuals, in challenging harmful and unlawful governmental action and in supporting governmental action. DFF's advocacy for democratic governance aligns with the Framers' view that a city under the control of a standing army is inconsistent with freedom and liberty.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants' emergency motion emphasizes that the D.C. National Guard (DCNG) is a "federal entity" that the President, as Commander-in-Chief, seeks to deploy to a "federal enclave" for "federal purposes." Mot. 2. Defendants' position fails to recognize that the "federal" government includes more than the Executive Branch. This brief is offered to make two straightforward points that the emergency motion overlooks.

---

[1] *Amicus* affirms that no counsel for a party authored this brief in whole or in part and that no person other than *amicus*, its members, or its counsel made a monetary contribution intended to fund the brief's preparation or submission. All parties have consented to the filing of this brief.

*First*, under the Constitution's Seat of Government Clause, it is Congress—and not the President—that exercises "exclusive Legislation in all Cases whatsoever" over the Nation's Capital. The President does not have special powers over the District of Columbia—his powers *vis-à-vis* the District are only those powers that have been delegated by Congress.

*Second*, it has long been prohibited for "any part of the Army" to "execute the laws," unless "expressly authorized by the Constitution or Act of Congress." 18 U.S.C. § 1385. Defendants have sought refuge in a 1989 opinion by the Office of Legal Counsel, which takes the view that the DCNG is not "any part of the Army" (or any of the other service branches) when it operates in its "state" militia capacity. The OLC opinion is incorrect. The DCNG is always under the control of the President, and particularly so here, where defendants concede and emphasize the federal nature of the deployment. Because the deployment of the National Guard to the District of Columbia is for law-enforcement functions, defendants must identify express authorization for the use of the National Guard as a police force in the District.

2

## ARGUMENT

## I.  The President Requires Statutory Authorization To Deploy The D.C. National Guard.

The Constitution reserves to Congress the authority to "exercise exclusive Legislation in all Cases whatsoever, over [the District of Columbia]." U.S. Const. art. I, § 8, cl. 17.  This allocation of authority permits Congress to "exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes." *Palmore v. United States*, 411 U.S. 389, 397 (1973).

The President claims that he needs no statutory authorization from Congress to deploy the DCNG within the District.  Mot. 2 ("Even without express statutory authorization, [the President] may deploy [the DCNG] to a federal enclave for federal purposes without judicial second-guessing.").  The President's position distorts the relationship between the District (and its residents) and the federal government in dangerous and unpredictable ways.

The Founding Generation acknowledged the need for a seat of government that could not be controlled by a single State.  As James Madison explained in *The Federalist No. 43*, it was an "indispensable necessity" for Congress to govern what would become the District of Columbia, but that "a municipal legislature for local purposes, derived from

3

their own suffrages, will of course be allowed" for the District's residents. The history of the District has reflected periodic exchanges of power between Congress and local authorities. *See, e.g.*, Organic Act of 1801, 2 Stat. 103; Organic Act of 1871, 16 Stat. 419; Act of June 20, 1874, 18 Stat. 116; Home Rule Act of 1973, Pub. L. No. 93-198, 87 Stat. 774. Through these statutes, Congress has periodically delegated authority to the President, recognizing throughout that ultimate authority belongs to Congress itself.

There is, indeed, nothing in the Constitution that contemplates that District of Columbia will have an organized militia. The DCNG was created by Congress (*see* Act of Mar. 1, 1889, 25 Stat. 773 (codified at D.C. Code §§ 49-101 *et seq.*)). It was Congress that designated the President as Commander-in-Chief of the DCNG (D.C. Code § 49-104) and specified how the DCNG must be organized and the circumstances in which it may and may not be deployed (*e.g.*, *id.* §§ 49-102, 49-301, 49-305, 49-805).

Given that the District's police powers are within the scope of Congress's authority (*Palmore*, 411 U.S. at 397), that Congress has delegated certain of those powers to the District's local government (*see, e.g.*, D.C. Code § 5-101.03(1), (2), (10) ("[i]t shall be the duty of the Mayor" to "preserve the public peace," "prevent crime and arrest offenders," and "enforce and obey all laws"), and that Congress created the DCNG by statute (*see supra*), the

4

district court was plainly correct to conclude that "the President has no free-floating Article II power to deploy the [DCNG] for the deterrence of crime." ADD.021.

## II. The President's Authority To Deploy The D.C. National Guard For Law-Enforcement Purposes Is Further Limited By The Posse Comitatus Act.

The President's assertion that he has inherent authority to deploy the DCNG is additionally problematic because it conflicts with longstanding statutory restrictions on using the military for purposes of civil law enforcement. Since the end of Reconstruction, under the terms of the Posse Comitatus Act (PCA), Congress has prohibited the use of "any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force" to "execute the laws," unless "expressly authorized by the Constitution or Act of Congress." 18 U.S.C. § 1385.

OLC has nevertheless taken the position that the DCNG—a force operating permanently under the authority of the President and the Secretary of the Army—is exempt from the PCA and may be deployed to "execute the laws" so long as it acts "in its militia status (*i.e.*, not in federal service)." *Use of the National Guard to Support Drug Interdiction Efforts in the District of Columbia*, 13 Op. O.L.C. 91, 92 (1989).

Despite going out of their way to emphasize that the DCNG is a federal function, Defendants nevertheless seek to rely on the 1989 OLC opinion.

5

They are wrong in this case, and they are wrong more broadly; because Congress and the President have placed the DCNG under the perpetual control of the United States Army, its actions are always subject to the restrictions of the PCA.

### A. The Constitution permits states to maintain their own militias, which later become the National Guard.

Today, the Army National Guard describes itself as "the oldest component of the U.S. Armed Forces," founded in 1636, and "the primary combat reserve of the U.S. Army." National Guard, *Army National Guard*, https://perma.cc/J4U6-J5VV. But the history of the National Guard reflects a compromise at the Nation's founding that was responsive to the dual sovereignty of the state and federal governments and the imperative of civil responsibility for law enforcement.

The Nation's founding generation was attuned to the perils of a militarized society. As George Washington explained, "a large standing Army in time of Peace hath ever been considered dangerous to the liberties of a Country." George Washington, *Sentiments on a Peace Establishment* (1783), https://perma.cc/JE8Y-JLT2. When the Framers drafted the Constitution, they, likewise, "shared an antipathy toward the idea of having a large standing army and favored relying on organized militias." 1 Gian Gentile et al., *The Evolution of U.S. Military Policy from the Constitution to*

6

*the Present* 12 (2020), https://perma.cc/H5EM-NGSU. They were divided, however, on whether there should be any standing army and whether the state militias should be regulated by the federal government.

On one side, Founders recognized "the danger of relying on inadequately trained soldiers as the primary means of providing for the common defense." *Perpich v. Dep't of Def.*, 496 U.S. 334, 340 (1990). As Alexander Hamilton put it, "[t]he steady operations of war against a regular and disciplined army can only be successfully conducted by a force of the same kind." *The Federalist No. 25* (Alexander Hamilton); *see also The Federalist No. 46* (James Madison) (favoring a standing regular army).

Other Founders worried that ceding the state militias to the Federal Government would be the death knell of state sovereignty. Elbridge Gerry, for example, argued that the states' very existence depended on their militias and that, without them, the Federal Government "may enslave the States." James Brown Scott, *The Militia: Extracts from the Journals and Debates of the Federal Convention, the State Constitutional Conventions, the Congress, the Federalist, Together with Papers Relating to the Militia of the United States*, S. Doc. No. 695, 64th Cong. 31 (1917). Oliver Ellsworth argued that "[i]t must be vain to ask the States to give the Militia out of their hands" because, without the militia, the State "would pine away to nothing." *Id.* at 33; *see also* 3 *The Debates on the Adoption of the Federal*

*Constitution* 401 (Jonathan Elliot, ed., 1863) (quoting Edmund Randolph at Virginia's ratification convention as saying that "there was not a member in the federal Convention, who did not feel indignation" at the idea of a standing Army).

Ultimately, to avert the "intolerable threat to individual liberty and to the sovereignty of the separate States," *Perpich*, 496 U.S. at 340, the Framers delegated to Congress the authority to "raise and support Armies," U.S. Const. art. I, § 8, cl. 12, but reserved to the States the appointment of officers and the training of the separate militias, "according to the discipline prescribed by Congress," *Id.* cl. 16. Reflecting our system of dual sovereigns, the state militias may be incorporated into the Federal Army, as the Constitution gave to Congress the "Power . . . To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions," *Id.* cl. 15, and designated the President as "Commander in Chief of the Army and the Navy of the United States, and of the Militia of the several States, when called into the actual Service of the United States," U.S. Const. art. II, § 2, cl. 1. As described by James Madison: "I cannot conceive that this Constitution, by giving the general government the power of arming the militia, takes it away from the state governments. The power is concurrent, and not exclusive." 3 Elliot, *supra*, at 382.

The National Guard system reflects the evolution of the militias that were preserved in the Constitution. Until "ordered into active federal duty by an official acting under a grant of statutory authority from Congress," *United States v. Hutchings*, 127 F.3d 1255, 1258 (10th Cir. 1997), national guards serve their respective States. Title 10 of the U.S. Code puts any national guard called into federal service under the control of the President and the federal military establishment. And Title 32 of the U.S. Code creates a hybrid state-federal militia status by which governors grant the President use of the state national guards.

### B. The Office of Legal Counsel adopts the legal fiction that the D.C. National Guard can exist as something other than a part of the Army.

In a 1989 opinion, OLC concluded that the PCA does not apply to the DCNG when it is deployed "in its militia rather than federal service capacity." 13 Op. O.L.C. at 92. In the view of that memo, the DCNG in its state-militia status does not constitute "any part of the Army" to trigger the PCA.

But as OLC has otherwise acknowledged, *see Mil. Support for Customs & Border Prot. Along the S. Border Under the Posse Comitatus Act*, 2021 WL 298369, at *17 (O.L.C. Jan. 19, 2021), whether a state National Guard is part of the Army under the PCA turns on whether it is under the "command

9

and control" of the Federal Army or the State Governor. *See, e.g.*, *Hutchings*, 127 F.3d at 1258.

The question under the PCA is not, as OLC assumes, the *label* assigned to the deployment. It is a question of *control*. "The District of Columbia National Guard is the only National Guard that reports only to the U.S. President." D.C. Nat'l Guard, *Establishing the Militia*, https://perma.cc/WT49-9ZSA; *accord* D.C. Code § 49-409. The President commissions all officers of the DCNG. D.C. Code § 49-305. The President has the direct power to order the DCNG into service. *Id.* The DCNG does not answer to the Mayor; it answers only to the President, who has directed the DCNG to report, in its militia capacity, through the Secretary of Defense, *see* Exec. Order No. 11,485, 34 Fed. Reg. 15,411 (Oct. 1, 1969), who, in turn, has delegated command authority to the Secretary of the Army, *see* Mem. for Sec'y of the Army et al. on Supervision and Control of the National Guard of the District of Columbia (Oct. 10, 1969), https://perma.cc/7C7R-6GJA. And if the Mayor wants to call upon the DCNG, she can only request that the President exercise his exclusive authority. *See, e.g.*, D.C. Code § 49-103.

Governing statutes beyond Title 49 of the D.C. Code also vest in the President operational power over the DCNG. As previously mentioned, under Title 10 of the U.S. Code, the President can call any National Guard,

10

including the DCNG, into federal service. And although Title 32 gives a governor discretion to refuse a request from the President, *see* D.C. PI Br. 13 (citing Haynes Decl. Exs. 11-20, 45-46), the District's Mayor lacks any similar authority. Because the President is at all times the Commander-in-Chief of the DCNG, he plays the same role that a state governor does over a state national guard. Under Title 32, the President decides whether to deploy the DCNG, highlighting that the DCNG is always in federal service. Because the President exercises the same authority over the DCNG in a "militia" or "federal" status, Defendants' apparent position is that the President gets to decide, only as to the DCNG, whether he wants to subject a deployment to the PCA.

Put simply, OLC's opinion commits an error at the threshold—it presumes that there *is* such a thing as non-federal service for the DCNG. But the President is the Commander-in-Chief regardless of the capacity in which the DCNG is serving. And whenever the DCNG is ordered into duty, that order comes from "an official acting under a grant of statutory authority from Congress." *Hutchings*, 127 F.3d at 1258. The DCNG is always a "part of the Army" of the United States for purposes of the PCA and it may engage in law-enforcement activities only as expressly authorized by the Constitution or Act of Congress.

## CONCLUSION

Defendants' motion for a stay pending appeal should be denied.

Respectfully submitted,

 /s/ *Brian D. Netter*

Brian D. Netter
Bradley Girard
Democracy Forward Foundation
P.O. Box 34556
Washington, D.C. 20043
(202) 448-9090

*Counsel for* Amicus Curiae

December 2, 2025

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 27(d), I certify that this brief:

(i) contains 2468 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word 365, set in Century Schoolbook font in a size measuring 14 points or larger.

 /s/ *Brian D. Netter*
Brian D. Netter

## CERTIFICATE OF COUNSEL

In accordance with Circuit Rule 29(d), I certify that a separate brief for *amicus curiae* is warranted because counsel prepared this filing unaware of other *amici* who are filing a brief in support of plaintiff-appellee. Moreover, a separate brief is warranted because the foregoing brief addresses a narrow issue of particular interest to *amicus*—the separation of powers between Congress and the Executive as to the deployment of National Guard troops.

/s/ *Brian D. Netter*
Brian D. Netter

## CERTIFICATE OF SERVICE

I certify that on December 2, 2025, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ *Brian D. Netter*

Brian D. Netter