[ORAL ARGUMENT NOT YET SCHEDULED]

No. 25-5418

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

DISTRICT OF COLUMBIA,

*Plaintiff-Appellee*,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,

*Defendants-Appellants*.

---

*On Appeal from the United States
District Court for the District of Columbia*

---

**BRIEF OF CONSTITUTIONAL ACCOUNTABILITY CENTER
AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE
AND IN OPPOSITION TO MOTION FOR ADMINISTRATIVE
STAY AND FOR STAY PENDING APPEAL**

---

Elizabeth B. Wydra
Brianne J. Gorod
Brian R. Frazelle
CONSTITUTIONAL
  ACCOUNTABILITY CENTER
1730 Rhode Island Ave. NW
Suite 1200
Washington, D.C. 20036
(202) 296-6889
brian@theusconstitution.org

*Counsel for Amicus Curiae*

## STATEMENT REGARDING CONSENT TO FILE
## AND SEPARATE BRIEFING

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for *amicus curiae* Constitutional Accountability Center (CAC) represents that counsel for all parties have consented to the filing of this brief.[1]

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for *amicus curiae* certifies that a separate brief is necessary. *Amicus* is a think tank and public interest law firm dedicated to fulfilling the progressive promise of the Constitution's text and history. CAC works in our courts, through our government, and with legal scholars to improve understanding of the Constitution and to protect the rights, freedoms, and structural safeguards that our nation's charter guarantees. In furtherance of those goals, CAC frequently files *amicus* briefs in the federal courts addressing questions of constitutional and statutory interpretation, including recent briefs concerning National Guard deployments in the Seventh and Ninth Circuits. CAC accordingly has an interest in this case and is well situated to aid the Court in resolving the pending motion for a stay.

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than *amicus curiae* or its counsel made a monetary contribution to its preparation or submission.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* states that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

I.    PARTIES AND *AMICI*

All parties and *amici* who have appeared in this case are listed in Defendants-Appellants' Motion for a Stay.

II.   RULINGS UNDER REVIEW

Reference to the ruling under review appears in Defendants-Appellants' Motion for a Stay.

III.  RELATED CASES

Reference to any related cases pending before this Court appears in Defendants-Appellants' Motion for a Stay.

Dated:  December 2, 2025                     */s/ Brian R. Frazelle*
                                            Brian R. Frazelle

                                            *Counsel for Amicus Curiae*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... v

GLOSSARY.................................................................................... viii

INTEREST OF *AMICUS CURIAE* .................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................... 1

ARGUMENT ................................................................................. 1

I.    The D.C. Code Does Not Authorize the President's Deployment of
the National Guard for Crime Reduction .......................................... 1

    A.    "Other Duties" (D.C. Code § 49-102)...................................... 1

    B.    "Aid the Civil Authorities" (D.C. Code § 49-404) ................... 7

    C.    "Commander-in-Chief" (D.C. Code § 49-409)......................... 8

II.   Title 32 Does Not Authorize the President's Deployment................. 9

CONCLUSION ................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Ali v. Fed. Bureau of Prisons*,
  552 U.S. 214 (2008) .............................................................. 3

*Fischer v. United States*,
  603 U.S. 480 (2024) .............................................................. 2

*Gonzales v. Oregon*,
  546 U.S. 243 (2006) .............................................................. 10

*United States v. Texas*,
  599 U.S. 670 (2023) .............................................................. 2

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*,
  508 U.S. 439 (1993) .............................................................. 2

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014) .............................................................. 2

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) .............................................................. 10

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) .............................................................. 1


<u>STATUTES</u>

An Act to Provide for the Organization of the Militia of the District of
  Columbia, ch. 328, 25 Stat. 772 (1889) ................................. 8, 9

D.C. Code § 49-102 ................................................................. 2, 5

D.C. Code § 49-103 ................................................................. 8

D.C. Code § 49-404 ................................................................. 7

10 U.S.C. § 251 ...................................................................... 11

10 U.S.C. § 284 ...................................................................... 11

10 U.S.C. § 12406 ................................................................... 11

18 U.S.C. § 1385 ..................................................................... 11

## TABLE OF AUTHORITIES – cont'd

**Page(s)**

32 U.S.C. § 112 ........................................................................... 11

32 U.S.C. § 502 ........................................................................... 10, 11


EXECUTIVE BRANCH MATERIALS

Exec. Order No. 11485, 34 Fed. Reg. 15411 (Oct. 3, 1969) ...................... 7

Memorandum for the Assistant Attorney General, Civil Division, from
    Norbert A. Schlei, Assistant Attorney General, OLC, *Memorandum
    Concerning the Amenability of Members of the National Guard of the
    District of Columbia to Courts-Martial* (Aug. 9, 1963) ......................... 4

Norbert A. Schlei, Assistant Attorney General, OLC, *Re: Authority to
    Use the National Guard of the District of Columbia to Supplement
    Civilian Police Force Activities During a Massive Demonstration or
    Parade in the District of Columbia* (July 30, 1963) ............................... 6

*Use of the National Guard to Support Drug Interdiction Efforts in the
    District of Columbia*, 13 Op. O.L.C. 91 (1989) ...................................... 6


BOOKS, ARTICLES, AND OTHER AUTHORITIES

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of
    Legal Texts* (2012) .................................................................................. 3

Frederic J. Stimson, *American Statute Law* (1886) .................................... 9

# GLOSSARY

OLC                Office of Legal Counsel

## INTEREST OF *AMICUS CURIAE*

Constitutional Accountability Center is a think tank and public interest law firm that works to protect the rights, freedoms, and structural safeguards that our nation's charter guarantees.  Accordingly, CAC has an interest in this case.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The word "federal" is not an incantation that allows presidents to employ the National Guard for whatever purpose they want.  Any power claimed by the President "must stem either from an act of Congress or from the Constitution." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952).  Defendants present no argument that the Constitution authorizes this deployment (and rightly so), which means it is lawful only if authorized by Congress.  But no statute empowers presidents to assign crime-fighting duties to the District of Columbia National Guard, or to import troops from other jurisdictions for that purpose.

## ARGUMENT

**I.     The D.C. Code Does Not Authorize the President's Deployment of the National Guard for Crime Reduction.**

**A.  "Other Duties" (D.C. Code § 49-102)**

Defendants offer just one provision from the D.C. Code as authority for their actions: Section 49-102 ("Prescribing Drills").  More precisely, they offer just *two words* from this provision, which they construe in isolation from everything surrounding those words.  Defendants' boundless reading of the term "other

1

duties" violates the "fundamental canon of statutory construction that the words of a statute must be read in their context." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014) (quotation marks omitted).

Here is what Section 49-102 says:

> The Commanding General shall prescribe such stated drills and parades as he may deem necessary for the instruction of the National Guard, and may order out any portion of the National Guard for such drills, inspections, parades, escort, or other duties, as he may deem proper. The commanding officer of any regiment, battalion or company may also assemble his command, or any part thereof, in the evening for drill, instruction, or other business, as he may deem expedient; but no parade shall be performed by any regiment, battalion, company, or part thereof, without the permission of the Commanding General.

D.C. Code § 49-102.  In "expounding a statute," courts "must not be guided by a single ... member of a sentence, but look to the provisions of the whole law." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 455 (1993) (quotation marks omitted).  Instead of "focusing on two words in isolation," *United States v. Texas*, 599 U.S. 670, 697 (2023) (Gorsuch, J., concurring in the judgment), the way to interpret a catchall term like "other duties" here "is to look for guidance from whatever examples come before it," *Fischer v. United States*, 603 U.S. 480, 487 (2024).  Under the *ejusdem generis* canon, "a general or collective term at the end of a list of specific items is typically controlled and defined by reference to the specific classes [of terms] that precede it." *Id.* (quotation marks omitted).

The phrase on which Defendants rely is "a list of specific items separated by commas and followed by a general or collective term."  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008).  The *ejusdem generis* canon governs such formulations, "when a drafter has tacked a catchall phrase at the end of an enumeration of specifics, as in *dogs, cats, horses, cattle, and other animals*." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012).  This canon "implies the addition of *similar* after the word *other*," *id.*, as in "other similar animals," or, here, "other similar duties."  *Id.* at 200.

Defendants ascribe a meaning to "other duties" that renders the term completely unlike the words that precede it.  Two of those words pertain to military training ("drills, inspection"), one to a purely ceremonial duty ("parades"), and one to a largely ceremonial duty ("escort").  But Defendants read the catchall term "other duties" as grounds to establish a supplemental police force with power to "assist law enforcement," Decl. of Colonel Lawrence M. Doane, ¶ 6 (ADD.068), identify perceived crimes, *id.* ¶ 7 (ADD.06), look out for "suspects," *id.* ¶ 12 (ADD.070), and physically detain people against their will, *id.* ¶ 7 (ADD.06).

If Defendants' argument were correct, troops could be authorized to do much more, including searching homes, conducting interrogations, and making formal arrests.  Although Defendants protest that they have not *currently* ordered

the Guard to carry out such functions, they have not disavowed their power to do so or explained why their argument does not allow it.

Even the Department of Justice's Office of Legal Counsel has advised against relying on this interpretation of Section 49-102.  After a decision was made to order National Guard troops to supplement the police in response to the March on Washington, a question arose about court-martialing troops who might refuse to serve.  OLC warned against relying on the term "other duties" as authority for the order, recognizing the risk that "such a construction would not be sustained by the courts."  Memorandum for the Assistant Attorney General, Civil Division, from Norbert A. Schlei, Assistant Attorney General, OLC, *Memorandum Concerning the Amenability of Members of the National Guard of the District of Columbia to Courts-Martial* 3 (Aug. 9, 1963).  As OLC explained, "the term 'other duties' ... might be construed by the courts *in pari materia* with the other terms used in that section which relate primarily to drill- and training-type activities as distinguished from the aid-to-civil-authorities-type activities expressly covered by [D.C. Code § 49-103]."  *Id.*

Additional aspects of the text confirm that "other duties" lacks the broad meaning Defendants claim.  First, the term follows language leaving no doubt that this sentence pertains only to training and ceremonial functions: "The Commanding General *shall prescribe such stated drills and parades as he may*

*deem necessary for the instruction of the National Guard*, and may order out any portion of the National Guard for such drills, inspections, parades, escort, or other duties, as he may deem proper."  D.C. Code § 49-102 (emphasis added).

Moreover, Section 49-102 empowers the Guard's *Commanding General* to order troops to perform these "other duties." *Id.*  Under Defendants' reading, the Commanding General, on his own, could order the Guard's troops to fight crime across Washington, D.C.

A further implication of Defendants' reading is that *any* of the Guard's commanding officers—by themselves—may deploy their troops for law enforcement activities.  The second half of Section 49-102 permits the commanding officer of any regiment, battalion, or company to "assemble his command … in the evening for drill, instruction, *or other business*, as he may deem expedient."  D.C. Code § 49-102 (emphasis added).  The phrase "other business, as he may deem expedient," is just as capacious as the phrase "other duties, as he may deem proper" in the previous sentence.  There is no textual basis for treating them differently.  And the *only* limit on commanding officers here is that "no parade shall be performed ... without the permission of the Commanding General." *Id.*  One could hardly ask for a clearer indication that this sentence, like the one before it, is directed exclusively at ceremonial and training functions.

Without a credible textual argument or any judicial support, Defendants invoke a supposedly decades-old position of OLC. What they cite, however, are two memos with virtually no analysis.

The sum of the 1963 memo's analysis is that, because the President is in charge of the D.C. Guard, "it would certainly not seem inappropriate for the President to request or urge the commanding general to use the National Guard in support of activities of the District of Columbia police whenever he feels that the welfare, safety, or interest of the public would be served thereby." *Id.* at 3. Norbert A. Schlei, Assistant Attorney General, OLC, *Re: Authority to Use the National Guard of the District of Columbia to Supplement Civilian Police Force Activities During a Massive Demonstration or Parade in the District of Columbia* 2 (July 30, 1963). That casual remark lacks any serious analysis of text, structure, or context. And only a week later, OLC warned against relying on this interpretation in court. *See supra* at 4.

As for the 1989 OLC memo, its cursory discussion is no more helpful. Again citing Section 49-102, the memo simply asserts, without analysis, that "other duties" covers law enforcement, offering nothing but the 1963 memo as support. *Use of the National Guard to Support Drug Interdiction Efforts in the District of Columbia*, 13 Op. O.L.C. 91, 93 (1989).

Finally, Defendants cite Executive Order 11485, but even if presidents could grant themselves power through executive order, Defendants omit part of the sentence they quote, which authorizes aiding the civil authorities only "under title 39 of the District of Columbia Code."  Exec. Order No. 11485, § 1, 34 Fed. Reg. 15411 (Oct. 3, 1969).  That sentence underscores that the Code's statutory provisions are the *sole* legal authority under which the National Guard may be used "to aid civil authorities," *id.*, by assisting with "law enforcement," *id.* § 2.

## B.  "Aid the Civil Authorities" (D.C. Code § 49-404)

Defendants also claim support from a provision that recognizes that the National Guard may be used "to aid the civil authorities in the execution of the laws."  Mot. 11 (quoting D.C. Code § 49-404).  But no one disputes that the D.C. Code allows the Guard to aid civil authorities in the execution of the laws—under Section 49-103.  Nothing in Section 49-404 suggests the existence of some additional, atextual power to execute the laws beyond what 49-103 provides.

The existence of Section 49-103, in other words, explains the reference to aiding the civil authorities in Section 49-404.  The similar phrasing of these provisions makes the connection clear.  Section 49-404 exempts the enrolled militia from duty "except when called into the service of the United States, or to aid the civil authorities in the execution of the laws or suppression of riots."  D.C. Code § 49-404.  This language mirrors Section 49-103, which provides for

requesting aid "in suppressing such violence and enforcing the laws" when there is a "tumult, riot, or mob." *Id.* § 49-103.

The link between these two sections is even more evident in the original statute creating the D.C. National Guard. *See* An Act to Provide for the Organization of the Militia of the District of Columbia, ch. 328, 25 Stat. 772 (1889). That statute contains the two sections discussed above, *see id.* §§ 4, 45, 25 Stat. at 773, 778, and another section that similarly mentions the Guard being required "for the suppression of riots, or to aid civil officers in the execution of the laws," *id.* § 10, 25 Stat. at 774. Here too, "suppression of riots" is paired with aiding civil officers "in the execution of the laws," *id.*, referring to the almost identical language in what is now Section 49-103, *see id.* § 45, 25 Stat. at 778. And right after the predecessor to Section 49-103, yet another provision refers to troops being "ordered on duty to aid the civil authorities." *Id.* § 46, 25 Stat. at 778. That language clearly refers to the section immediately before it.

### C. "Commander-in-Chief" (D.C. Code § 49-409)

Defendants also claim that the President "does not need express statutory authorization" because he is the Guard's Commander-in-Chief. Mot. 12-13.

Commander-in-chief status, however, does not include the power to define the purposes for which the Guard may be deployed. Those purposes have always been separately enumerated. When Congress created the D.C. Guard, all the states

made their governors the commander-in-chief of the state militia, *see* Frederic J. Stimson, *American Statute Law* § 297 (1886), but they differed on the purposes for which the commander-in-chief could "call out the militia," *id.* § 298. Some permitted using the militia "to execute the laws"; some to "suppress insurrections"; some to "repel invasion"; and some to "preserve the public peace." *Id.* Not all states broadly permitted their governors to use the militia to execute the laws. *Id.* Congress followed the narrow approach, demanding specific types of exigencies and requests from specific civilian officials. *See* Act to Provide for the Organization of the Militia, § 45, 25 Stat. at 778.

Defendants object that this regime does not allow the D.C. Guard to "respond[] to natural disasters." Mot. 12. But when Congress created the D.C. Guard, it appears that *none* of the states authorized the use of the militia to respond to natural disasters. Stimson, *supra*, § 298. The fact that Congress has not updated D.C. law to provide for this contingency does not support Defendants' claim that commander-in-chief status, standing alone, allows presidents to transform the D.C. Guard into a supplemental police force.

## II. Title 32 Does Not Authorize the President's Deployment.

Defendants' reliance on 32 U.S.C. § 502(f)(2) is déjà vu all over again. Citing a vague reference to "operations or missions" tucked at the end of a

provision titled "drills and field exercises," Defendants claim broad leeway to use military power for domestic law enforcement—and apparently for anything else.

Section 502 does not confer this unbounded power. It requires National Guard components to "assemble for drill and instruction" and to "participate in training at encampments, maneuvers, outdoor target practice, or other exercises." *Id.* § 502(a). Subsection (f) allows troops to be ordered "to perform training or other duty in addition to" the duties just mentioned. *Id.* § 502(f)(1). This other "training or duty" may include "[s]upport of operations or missions undertaken by the member's unit at the request of the President or Secretary of Defense." *Id.* § 502(f)(2).

According to Defendants, this reference to "operations or missions undertaken ... at the request of the President," *id.* 502(f)(2)(A), authorizes using National Guard troops for *anything*. *See* Mot. 10. So long as a governor lends troops, the National Guard may be sent anywhere for any purpose.

One can scarcely imagine a bigger elephant crammed into a smaller mousehole. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Defendants' reading is the poster child for "broad and unusual authority" wrested from "vague terms or ancillary provisions." *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006). This reading is unsustainable.

To start, using the D.C. Guard to fight crime is unlawful, as discussed above. As a result, this effort is not an "operation or mission" for which out-of-state troops may lawfully be ordered to perform duties under Section 502(f). *Cf.* Decl. of Donald Snider ¶ 12 (ADD.082) (the D.C. Guard "is the lead National Guard unit that is augmented by National Guard units from several states").

In addition, every statutory canon that dooms Defendants' reading of "other duties" in the D.C. Code speaks with equal force to "operations or missions" here. *See supra* at 2-3.

Further, Defendants' reading would allow presidents to evade the restrictions of the Insurrection Act, 10 U.S.C. § 251 *et seq.*, the Posse Comitatus Act, 18 U.S.C. § 1385, and other statutes that address the use of the military for law enforcement. When Congress authorizes military participation in law execution, it invariably limits that authority. *E.g.*, 32 U.S.C. § 112(c); 10 U.S.C. §§ 284, 12406. But on Defendants' view, instead of federalizing the National Guard, invoking the Insurrection Act, or employing similar statutes on the terms Congress has set—as past presidents have done—future presidents could simply rely on ideologically aligned governors to deploy military force domestically at will. That is not what Congress understood when it added the "operations or missions" clause to the tail end of a statute devoted to "drills and field exercises."

## CONCLUSION

The stay motion should be denied.

Respectfully submitted,

*/s/ Brian R. Frazelle*
Elizabeth B. Wydra
Brianne J. Gorod
Brian R. Frazelle
CONSTITUTIONAL
  ACCOUNTABILITY CENTER
1730 Rhode Island Ave. NW, Suite 1200
Washington, D.C. 20036
(202) 296-6889
brian@theusconstitution.org

*Counsel for Amicus Curiae*

Dated: December 2, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) and 29(a)(5) because it contains 2,597 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

Executed this 2nd day of December, 2025.

*/s/ Brian R. Frazelle*
Brian R. Frazelle

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December, 2025, I electronically filed the foregoing document using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

Dated: December 2, 2025

*/s/ Brian R. Frazelle*
Brian R. Frazelle