No. 25-5418

In the United States Court of Appeals for the District of Columbia Circuit

———————

DISTRICT OF COLUMBIA,
          *Plaintiff- Appellee,*

          *v.*

DONALD J. TRUMP, ET AL.
          D*efendants-Appellants.*

———————

On Appeal from the United States District
Court for the District of Columbia

———————

**BRIEF OF AMICUS THE OVERSIGHT PROJECT**

———————

SAMUEL EVERET DEWEY

Chambers of
Samuel Everet Dewey LLC

2200 12th Court North
Apt. 609
Arlington VA  22201
(703) 261-4194

# CERTIFICATION

Amicus the Oversight Project certifies as follows:

The Oversight Project has no parent entity and no entity has a greater than 10 percent ownership interest in The Oversight Project. The Oversight Project is a 501(c)(4) nonprofit organization dedicated to preserving American freedom by ensuring government is and remains responsible, accountable, and transparent.

Pursuant to Federal Rule of Appellate Procedure 29 (a)(4)(E) Amicus certifies that no party or their counsel participated in the drafting of this brief in whole or in part or funded this brief in whole or in part.

Pursuant to D.C. Circuit Rule 29, Amicus hereby submits this certificate.

**A. Parties and Amici**.

The parties and amici who have appeared before the Court are listed in Defendants-Appellants' D.C. Circuit Rule 28(a)(1) certificate.

**B. Rulings Under Review.**

The ruling under review is an opinion and order granting a preliminary injunction and Section 705 stay. The opinion and order are

attached to Defendants-Appellants' motion.

## C. Related Cases.

There are no related cases.

All parties consent to the filing of this brief.

# TABLE OF CONTENTS

## Contents

CERTIFICATION ............................................................................................ i

TABLE OF CONTENTS ................................................................................. iii

TABLE OF AUTHORITIES ............................................................................ v

INTEREST OF AMICI CURIAE .................................................................. viii

INTRODUCTION ........................................................................................... 1

OPINION BELOW ......................................................................................... 3

SUMMARY OF ARGUMENT ......................................................................... 4

ARGUMENT .................................................................................................. 9

    I. D.C. PURPORTS TO SUE AS SOVEREIGN AND IS THE REAL PARTY IN INTEREST. ............................................................................ 9

    II. D.C. CANNOT SUE THE UNITED STATES HERE. ............................ 10

       A. D.C. Exists Soley as a Municipal Corporation Created by the United States; it Has No Sovereign Power to Vindicate ............................... 10

       B. A Subordinate Municipal Corporation of the United States Cannot Sue the United States to Vindicate a Sovereign Interest. ............... 14

       C. There is no Harm to D.C. As Sovereign for Standing Purposes. ...... 21

       D. The Original Public Meaning of the District Clause Supports This Conclusion ............................................................................................ 23

    III.    D.C. LACKS AUTHORITY TO BRING THIS ACTION. .................... 26

CONCLUSION ............................................................................................. 29

CERTIFICATE OF COMPLIANCE ................................................................. 30

CERTIFICATE OF SERVICE ......................................................................... 31

# TABLE OF AUTHORITIES

**Cases:**

*Adams v. Clinton*, 90 F.Supp.2d 35 (D.D.C. 2000) (3 Judge Court) ......... 12, 20

*Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973) ...................................... 18

*Alexander v. Sandoval*, 532 U.S. 275, (2001).................................................... 28

*Banner v. United States*, 428 F.3d 303 (D.C. Cir. 2005)...........11, 15, 20, 23, 26

*Barnes v. District of Columbia*, 91 U.S. (1 Otto) 540 (1875 ...................... 14, 17

*Barnes v. Kline*, 759 F.2d 21 (D.C. Cir. 1984)........................................... 20, 21

*City of New York v. State*, 86 N.Y.2d 286 (N.Y. 1995) .................................... 19

*Corp. of Georgetown v. United States*, 30 F.Cas. 1053 (C.C.D.C. 1858) (No.
18,281)................................................................................................... 14

*Croson v. District of Columbia*, 2 F.2d 924 (D.C. Cir. 1924) .......................... 11

*Def. Supplies Corp. v. U.S. Lines Co.*, 148 F.2d 311 (2d Cir. 1945) ............... 15

*Dir., Off. Of Workers' Comp. Prog. Dept of Labor v. Newport News
Shipbuilding and Dry Dock Co.*, 514 U.S. 122 (1995) .................................. 16

*District of Columbia v. Exxon Mobil Oil Corp.*, 172 A.3d 412 (D.C. 2017)..... 12

*District of Columbia v. John. R. Thompson Co.*, 346 U.S. 100 (1953)............ 17

*Emp. Welfare Comm v. Daws*, 559 F.2d 1375 (5th Cir. 1979)......................... 16

*Globe & Rutgers Fire Ins. Co. v. Hines*, 273 F. 774 (2d Cir. 1921) ................ 16
*Groupo Mexciano v. All Bond Fund, Inc.*, 527 U.S. 308 (1999)...................... 29

*Gunther v. Wright*, 75 F. 742 (6th Cir. 1896)................................................... 24

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) .......................... 21

*In Re Sealed Case*, 146 F.3d 1031 (D.C. Cir. 1998) ........................................ 18

*Juliano v. Fed. Asset Disposition Ass'n*, 736 F.Supp 348 (D.D.C. 1990) ........ 16

*Kendall ex rel. Stokes v. United States*, 37 U.S. (12 Pet.) 524 (1838) ............. 11

*Landmark Co., Inc. v. FDIC*, 256 F.3d 1365 (Fed. Cir. 2001) ......................... 16

*Metropolitan R. Co. v. District of Columbia*, 132 U.S. 1 (1889) ..................... 11

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) ......... 11

*Neild v. District of Columbia*, 110 F.2d 246 (D.C. Cir. 1940).................... 12, 24

*Rex v. City of London*, 8 Cobbett's State Trials 1039 (K.B. 1683).................. 17

*SEC v. Fed. Labor Relations Authority*, 568 F.3d 990 (D.C. Cir. 2009) ... 15, 21

*Snow v. United States*, 85 U.S. (18 Wall.) 317 (1873) ..................................... 11

*Stoutenburgh v. Hennick*, 129 U.S. 141 (1889) ............................................... 28

*Town of Mt. Pleasant v. Beckwith*, 100 U.S. 514 (1879)................................. 19

*Trans Union LLC v. Rameriz*, 594 U.S. 413 (2021)........................................ 22

*Trump v. Mazars*, 591 U.S. 848 (2018) .......................................................... 25

*U.S. Postal Service v. Postal Regulatory Comm'n*, 963 F.3d 137 (D.C. Cir.
   2020)............................................................................................................ 16

*United State ex rel. Daly v. MacFarland*, 28 App. D.C. 552 (D.C. Cir. 1907)  13

*United States ex rel. for the Use of Tenn. Val. Authority v. Easement and
   Right of Way over Certain Land in Bedford County, Tenn.*, 204 F.Supp. 837
   (E.D. Tenn. 1962)........................................................................................ 16

*United States ex rel. Kerr v. Ross*, 5 App. D.C. 241 (D.C. Cir. 1895) ............. 13

*United States v. District of Columbia*, 596 F.Supp. 725 (D. Md. 1984) ......... 20

*United States v. ICC*, 337 U.S. 426 (1949) .......................................... 15, 19, 20

*United States v. Johnson*, 410 F.3d 137 (4th Cir. 2005).................................... 8

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988) ...................... 17

*United States v. Shell Oil Co.*, 605 F.Supp. 1064 (D. Colo. 1985)............. 16, 21

*United States v. Texas*, 599 U.S. 670 (2023) .................................................... 22

*Ward v. District of Columbia*, 494 A.2d 666 (D.C. 1985)................................ 13

*Williams v. Mayor and City Counsel of Baltimore*, 289 U.S. 36 (1933).......... 18

**Statutes:**

20 Stat 102 (1878) ...................................................................................... 13, 27

D.C. Code § 1-102 .................................................................................. 5, 12, 26

D.C. Code § 2-306.01 ................................................................................... 13

Organic Act, 16 Stat. 419 (1871) .................................................................... 28

U.S. Const. Art. I. § 8 Cl. 17 ........................................................................... 11

**Other Authorities:**

*Constitutionality of the Nuclear Regulatory Commission's Imposition of Civil Penalties on the Air Force*, 13 Op. OLC 131 (1989) ...................................... 16

H.R. 4922 (2025)............................................................................................. 8

H.R. 5125 (2025)............................................................................................. 8

H.R. 5140 (2025)............................................................................................. 8

H.R. 5143 (2025)............................................................................................. 8

James Madison, *Notes of Debates in the Federal Convention* 378 (1987 ed.). 23

John F. Dillon, *Treatise on the Law of Municipal Corporations* 101–02 (1878) ...................................................................................................................... 27

*See* Scalia & Gardiner, *Reading Law* 197 (2012) ........................................... 27

## INTEREST OF AMICI CURIAE

The Oversight Project is a not-for-profit 501(c)(4) organization dedicated to preserving American freedom by ensuring government is and remains responsible, accountable, and transparent. The Oversight Project regularly litigates Freedom of Information Act and public records cases, files amicus briefs, and provides commentary on current events.

# INTRODUCTION

This is a case about one thing, *power*.  Power in all its forms.  Most fundamentally, this case is a disagreement about who has power over the District of Columbia ("D.C.?")?[1]  At the end of the day, this case is nothing more than profound political disagreement over who shall govern the District of Columbia.  The proper places to remedy that disagreement are in the halls of Congress and ballot boxes across the country, not the courthouse.

President Donald J. Trump and Congress have been clear—the District of Columbia is ultimately under federal control.  They are correct.  In their judgment, crime has reached unacceptable levels, and the District of Columbia has declined to a city unbefitting its role as our Nation's Capital.  The President decided to do something about it.  And he is well within his powers to do so.

There is nothing odd or unusual about the President's actions here.  For almost 100 years the Corporation that is D.C. was governed—and governed well—by three Presidentially-appointed Commissioners.  Home Rule is an aberration of dubious legality that has failed spectacularly.  Not surprisingly,

---

[1]  We use the term District of Columbia to refer to the geographic region as opposed to the local government thereof which we signify by D.C..

D.C. submits otherwise. They say Home Rule is essential; indeed, D.C. should be a State and freed from "colonial" governance.

To be sure, under the principles of federalism, any State or city within a State may choose policies that undermine the policies of the Federal Government. But D.C. is *not* a State, nor is it part of one. D.C. must be governed in a way that is responsive to the *National* will. The Constitution mandates it.

But how can D.C. possibly be run by the National will when a local government that has a different view has the power to rush into Federal Court to sue the Federal Government to adjudicate political differences? It cannot. There will be a cycle of topseyturvedom by lawsuit in which every dispute between D.C. and the National Government is marked not by political resolution, but a race to the Courthouse.[2] We have seen that already—an unprecedented explosion of litigation simply because D.C. strongly disagrees with President Trump's indisputably National priorities for the District of Columbia.

---

[2] Given that the District of Columbia is *overwhelmingly* Democratic this is a one-way ratchet; the conflict almost always occurs only when a Republican Administration is in power. That of course exacerbates the problem as it is not merely a misalignment of National to local interests, but a perpetual repudiation of the National will only in one political direction.

2

Article III Courts have no business wading into this power struggle. This case should not be here.  There is no standing.  This Court lacks jurisdiction because D.C. lacks power to sue the United States to vindicate sovereign interests either directly or quo statutory delegations of power.

## OPINION BELOW

The District Court correctly acknowledged the bedrock premise that it "must assure itself of its jurisdiction and confirm that the District has standing to bring its challenges."  Stay Mot. Add. 013.  But despite asking the correct question, it then engaged in the worst sort of drive by standing analysis failing to even properly summarize the Federal Government's case. Worse, the District Court entirely ignored Amici's brief below which addressed standing issues in detail.  In the end, the District Court conducted its own power grab:  Establishing (contrary to hundreds of years of precedent) that it—and only it—has power to *finally* resolve disputes between the Federal Government and D.C.

The District Court tersely concluded that the "District can establish standing based on injuries to its sovereign power to govern itself and to the statutory rights afforded to it under the D.C. Code."  *Id.* at Add. 015.

First, the District Court held that "the District is injured by Defendants'

3

deployment of the DCNG and out-of-state National Guards because Defendants' actions usurp the District's rights to self-governance." *Id.* The District Court summarily reasoned that "because Congress delegated its exclusive authority over the District to the District government and its local elected representatives" and "[u]nder D.C. law, the District has a right to govern itself and to determine how to enforce laws in the District", that therefore"[t]he District may not be a sovereign like a state is, but it can nevertheless exercise delegated sovereign powers and is therefore injured by being unlawfully deprived of those powers." *Id.*

Second, the District Court found that "the District suffers a distinct injury from the presence of out-of-state National Guard units—an injury to its constitutional status as a federal district free from state interference." *Id.* at Add. 016. To the District Court's mind because of Home Rule, any National Guard deployment without the District's consent would "violate the District's right to be free from state influence by forcing the D.C. government to share power with state governors commanding Guard units." *Id.*

## SUMMARY OF ARGUMENT

The District Court erred.

To start, the Government of D.C. simply is *not* a "sovereign." *All* Sovereign power rests in the United States. D.C. is not a State. D.C. is but "a body corporate for municipal purposes" (D.C. Code § 1-102)—largely similar to any other city in the United States. Home Rule is irrelevant to this basic foundational construct. What *is* different about D.C. is that it exists *entirely* as a creation of the Federal Government. It has no independent existence beyond what the Federal Government chooses to grant it at any given instance; it is entirely dependent on the Federal Government. The only power D.C. has is that granted to it as a municipal corporation by its creator. Indeed, the federal government's control is so great that it might control and even snuff out D.C.'s very existence through prerogative writs. All of its power must be exercised within—and flow from—that construct.

Since D.C. has no sovereign power, it cannot suffer injury within the meaning of Article III as a sovereign. And because D.C. is a mere corporation created by the Federal Government, D.C. suffers no judicially cognizable injury even if it was "unlawfully deprived" of its right to exercise powers delegated by the Federal Government. D.C. cannot sue the very body which gives it its existence; it is part of it. *Id.* at Add 015. One cannot sue oneself. And it is a foundational principle of the law that a municipal corporation

5

cannot sue its sovereign creator.  The remedy for any usurpation of delegated power is political—not legal.  The District Court tellingly refused to grapple with any of this.

The District Court's alternative theory—that Home Rule somehow delegated to D.C. standing to sue to defend the *National* character of the District of Columbia—implodes under even cursory analysis.  To start, the Federal Government *has* control.  So this is much ado about nothing.  If the President does not want the National Guard in the District of Columbia, the National Guard will not be there.  Moreover, it is passing strange to say that the *National* power of the District is preserved by allowing the passions of local residents to overcome the clear wishes of the President, the only official elected by the Nation.  (Not to mention Congress, which agrees with the President here.).  The whole point of the District of Columbia was to ensure that the National Government would be free from the influence of local passions in particular States.   But there is no *structural* difference whatsoever between local influence from a State and a government of local residents attempting to impart its local will on the National Government. Either way, the point is that *Federal* control is needed.

6

This Court need not even reach the standing question. Under a fair reading of D.C.'s basic corporate power to "sue" it does not authorize the D.C. Attorney General to sue the Federal Government. This Court can and should end this case there—informed by the longstanding injunction of the Supreme Court to construe statutes to avoid fraught constitutional questions.

By the same logic, D.C. lacks an equitable cause of action against the Federal Government to assert a Constitutional limitation. Such an action is not only unknown to the common law, it was basically unheard of until the last few years.

To be clear, that does not mean there is *no* remedy should D.C. feel itself aggrieved. It—like any other citizen or corporation—has full power to petition Congress and the President for redress of grievances. And it is uniquely positioned through its existing municipal infrastructure to resort to the "hurly-burly" of politics and media. That is part of why it has a Delegate in the United States House of Representatives—a resource any other private lobbyist or municipal corporation can only dream of.

Indeed, the substantive issues have already been hotly debated by the political branches. D.C. has repeatedly made its case to Congress. But

Congress agreed with the President.[3]  It is precisely because D.C. *lost* before the Nation's political Branches that it turns to the counter-majoritarian Branch.  It seeks to have the judiciary nullify the will of the President and Congress.  But the judiciary need not resolve every dispute.  Many matters are meant to be worked out through politics—not law.  The District Court ironically seems to have entirely ignored this basic structural premise when it raced to determine that it had the ultimate power to determine who controls the District of Columbia.

Moreover, at least *some* claims advanced here by D.C. can be advanced by private parties suffering from specific and concrete injury.  *See, e.g.*, *United States v. Johnson*, 410 F.3d 137, 149 (4th Cir. 2005) (adjudicating *posse comitatus* claim in suppression motion and holding "widespread and repeated violations" of the Posse Comitatus Act could lead to suppression).

The merits of Home Rule and the merits of this case are obviously hotly contested topics.  They will be contested and resolved in some forum.  But under Article III and Statute they cannot be contested here.

---

[3]  *See, e.g.*, H.R. 4922 (2025), H.R. 5140 (2025), H.R. 5143 (2025), H.R. 5125 (2025).

8

# ARGUMENT

## I.   D.C. PURPORTS TO SUE AS SOVEREIGN AND IS THE REAL PARTY IN INTEREST.

D.C. is acting as if it were a State.  There is no doubt what D.C. views this case to be about.  *It* is the real party in interest.  *See, e.g.*, Motion for a Preliminary Injunction at 2 (ECF No. 3) ("Mot.") ("And preliminary injunctive relief is warranted to halt the irreparable harms these actions are inflicting *on the District*." (emphasis added)); *id.* at 17.

D.C. has brought this Action to vindicate its "sovereign" interest.  In every way possible it sets itself up as akin to a sovereign State resisting Federal encroachment.  *See, e.g.*, Mot. at 2 ("Every day that this lawless incursion continues, the District suffers harm to its sovereign authority to conduct local law enforcement as it chooses."); *id.* at 23 ("Nothing in the Home Rule Act gives other states the authority to engage in law enforcement in the District.  And it is a basic precept of our federal system that states may not exert their sovereign authority beyond their borders without the receiving jurisdiction's consent."); *id.* at 24 ("And, indeed, no other President has attempted to deploy non-federalized National Guard troops to a jurisdiction absent "coordination with or [a] request from the supported State.""); *id.* at 27 ("In our federal system, it is a bedrock principle that one state may not

9

"invade" another without its consent."); *id.* at 41 ("This intrusion has inflicted a substantial sovereign injury, by depriving the District of one of the core rights of self-government afforded in the Home Rule Act: the authority to control law enforcement operations in the District."); *id.* ("This loss of sovereign authority and control is itself irreparable.").

Moreover, D.C. has brought this suit because *it* disagrees with prudential wisdom of the President's actions. "The District's elected leaders did not invite these troops and do not believe their presence is in the best interests of the District." Mot. at 1. The policy disagreement could not be more starkly presented in the papers.

## II. D.C. CANNOT SUE THE UNITED STATES HERE.

### A. D.C. Exists Soley as a Municipal Corporation Created by the United States; it Has No Sovereign Power to Vindicate.

D.C. is not a sovereign and thus cannot proceed to litigate a policy disagreement as one sovereign against another sovereign. At its core the District Court's judgment is fatally flawed due to its failure to grapple with this self-evident legal proposition.

The text of the Constitution is explicit as to where all sovereignty within the District of Columbia resides: "*The Congress* shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District

10

(not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States." U.S. Const. Art. I. § 8 Cl. 17 (emphasis added). "Congress has the entire control over the district for every purpose of government" (*Kendall ex rel. Stokes v. United States*, 37 U.S. (12 Pet.) 524, 619 (1838)) and "thus, necessarily, the Executive and Judicial powers as well as the Legislative." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 76 (1982).

The "sovereign power . . . is not lodged in the corporation of the District of Columbia, but in the government of the United States. Its supreme legislative body is congress." *Metropolitan R. Co. v. District of Columbia*, 132 U.S. 1, 9 (1889). "Congress is not a foreign sovereign government in relation to the District, as the New Jersey legislature is to New York; Congress *is* the District's government, *see* U.S. Const. art. I, § 8, cl. 17". *Banner v. United States*, 428 F.3d 303, 309 (D.C. Cir. 2005); *see also Snow v. United States*, 85 U.S. (18 Wall.) 317, 320 (1873) ("During the term of their pupilage as Territories, they are mere dependencies of the United States. Their people do not constitute a sovereign power. All political authority exercised therein is derived from the General Government."); *Croson v. District of Columbia*, 2 F.2d 924, 924 (D.C. Cir. 1924) ("The District of Columbia, as a municipal

11

corporation, has the right to sue and be sued, but it possesses no sovereign power.").[4]

It is for this (among other) reasons that courts have repeatedly rejected treating the District of Columbia as a State (unless Congress has definitionally modified that term in statute). *See, e.g.*, *Neild v. District of Columbia*, 110 F.2d 246, 249 n.3 (D.C. Cir. 1940) (collecting authorities holding D.C. is not a state); *Adams v. Clinton*, 90 F.Supp.2d 35, 46–47 (D.D.C. 2000) (3 Judge Court), *aff'd*, 531 U.S. 941 (2000) (Mem.).

Moreover, when Congress created D.C. it made the pointed choice to create a municipal corporation, a highly subordinated form of local government:

> The District is created a government by the name of the "District of Columbia," by which name it is constituted a body corporate for municipal purposes, and may contract and be contracted with, sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this Code.

D.C. Code § 1-102. This statue has existed in identical form since 1878. *See*

---

[4] To be sure, the D.C. Court of Appeals has recently used the term "sovereign" loosely and even gone so far as to suggest that D.C. "is a sovereign for many purposes." *District of Columbia v. Exxon Mobil Oil Corp.*, 172 A.3d 412, 422 (D.C. 2017). But that is besides the point, *actual* sovereignty is a question of federal law. It is best seen as simply a shorthand for the municipal power possessed by D.C.

20 Stat 102 (1878). Thus, D.C. has only the power of a "municipal corporation" and Congress has expressly reserved its plenary power. *See* D.C. Code § 2-306.01. Pointedly, the Home Rule Act did not alter this framework, but adhered to it. *See, e.g.*, *Ward v. District of Columbia*, 494 A.2d 666, 668–69 (D.C. 1985) (so opining in *dicta*).

It is no answer to this to say, as the District Court did, that even though D.C. is not as sovereign, "[u]nder D.C. law, the District has a right to govern itself and to determine how to enforce laws in the District." Add. at 015. D.C. is entirely subordinate. *See, e.g.*, *United State ex rel. Daly v. MacFarland*, 28 App. D.C. 552, 558 (D.C. Cir. 1907) ("It is well settled that the District of Columbia has no legislative power, it being merely a municipal corporation bearing the same relation to Congress that a city does to the legislature of the State in which it is incorporated."); *United States ex rel. Kerr v. Ross*, 5 App. D.C. 241, 253 (D.C. Cir. 1895) ("The District itself is a municipal corporation, and its governing body of officers, the Commissioners, exercise powers, under the supreme control of Congress, analogous to those ordinarily delegated to the mayor and council of the municipal corporations organized generally under the laws of the States."). Thus, while D.C. may act in its limited municipal sphere of delegated powers, it is still very much

13

subordinate to the National Government. *See Barnes v. District of Columbia*, 91 U.S. (1 Otto) 540, 544 (1875). That is why, for example, D.C. as a "purely municipal corporation" can be subject to statutes of limitations like any other person. *Metropolitan R. Co.*, 132 U.S. at 11. The Supreme Court has been clear that the general proposition that "[a]ll municipal government are but agencies of the superior power of the state or government by which they are constituted, and are invested with only such subordinate powers of local legislation and control as the superior legislature sees fit to confer upon them" applies directly to any sort of municipal corporation created under Home Rule. *Id.* at 8. Indeed, so complete is the Federal Government's control that a Circuit Court saw no difficulty with it proceeding by indictment (as a form of prerogative writ) to control a predecessor of D.C. *See Corp. of Georgetown v. United States*, 30 F.Cas. 1053 (C.C.D.C. 1858) (No. 18,281).

**B.    A Subordinate Municipal Corporation of the United States Cannot Sue the United States to Vindicate a Sovereign Interest.**

The District Court's attempt to frame the issue less as one of actual sovereignty and more one of some form of a violation of a statutory "right[] to self-governance" and thus impairment or violation of a delegations of sovereign power is flawed as a matter of first principles. Add. 015. As a

14

mere municipal corporation, D.C. cannot sue its creator to enforce any delegated right or power. That has long been the law—and controls here. To be sure, Congress's power *may* have been delegated, and D.C.'s statutory delegation *may* have in fact been infringed. But that is irrelevant here; such an injury is not *judicially* cognizable. *Cf. Banner*, 428 F.3d at 309 ("[t]he Framers would naturally have expected that where tensions between local and national interests arose, *they could be resolved by Congress* with due consideration for the latter." (emphasis added)).

1.    Start with the basic (and unremarkable) "long-recognized general principle that no person may sue himself." *United States v. ICC*, 337 U.S. 426, 427 (1949); *accord Def. Supplies Corp. v. U.S. Lines Co.*, 148 F.2d 311, 312 (2d Cir. 1945). That principle is one of Article III standing. *See, e.g.*, *ICC*, 337 U.S. at 429; *Def. Supplies Corp.*, 148 F.2d at 313.

That principle applies fully to the United States. As then-Circuit Judge Kavanaugh explained, "because agencies involved in intra-Executive Branch disputes are not adverse to one another (rather, they are both subordinate parts of a single organization headed by one CEO), such disputes do not appear to constitute a case or controversy for purposes of Article III." *SEC v. Fed. Labor Relations Authority*, 568 F.3d 990, 997 (D.C. Cir. 2009)

(Kavanaugh, J., concurring); *accord U.S. Postal Service v. Postal Regulatory Comm'n*, 963 F.3d 137, 143–44 (D.C. Cir. 2020) (Rao, J., concurring); *Constitutionality of the Nuclear Regulatory Commission's Imposition of Civil Penalties on the Air Force*, 13 Op. OLC 131, 138 (1989).  Courts have long dismissed such lawsuits for lack of Article III standing regardless of whether they involved the Government itself, agencies, or components of agencies. *See, e.g.*, *Landmark Co., Inc. v. FDIC*, 256 F.3d 1365, 1380 (Fed. Cir. 2001) (; *Emp. Welfare Comm v. Daws*, 559 F.2d 1375, 1377–78 (5th Cir. 1979); *Globe & Rutgers Fire Ins. Co. v. Hines*, 273 F. 774 (2d Cir. 1921); *Juliano v. Fed. Asset Disposition Ass'n*, 736 F.Supp 348, 352–53 (D.D.C. 1990);*United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1083 (D. Colo. 1985) ; *United States ex rel. for the Use of Tenn. Val. Authority v. Easement and Right of Way over Certain Land in Bedford County, Tenn.*, 204 F.Supp. 837, 839 (E.D. Tenn. 1962). This rule applies in spades when the matters in dispute are question of policy as opposed to action as a market participant.  *See, e.g.*, *Dir., Off. Of Workers' Comp. Prog. Dept of Labor v. Newport News Shipbuilding and Dry Dock Co.*, 514 U.S. 122, 128–29 (1995).

**2.**    This long-standing rules applies in spades to D.C. bringing suits against the Federal Government.   D.C.'s existence as municipality is

16

contingent upon actions taken by the Federal Government; . without the Federal Government, D.C. does not exist. *See, e.g.*, *District of Columbia v. John. R. Thompson Co.*, 346 U.S. 100, 108 (1953) (theory of home rule is merely delegation of power residing solely in Congress); *Barnes*, 91 U.S. at 545 (""it is great or small according as the legislature shall extend or contract the sphere of its action.") Thus, an action by D.C. against the United States is plainly an action by the United States against itself.[5]   This is doubly so as concerns a lawsuit seeking to vindicate sovereign power.   Only the United States is sovereign; and there can be only one United States. *See, e.g.*, *United States v. Providence Journal Co.*, 485 U.S. 693, 701 (1988) (finding "somewhat startling" the submission that here is more than one "United States" that may appear before this Court.").   Thus, just as only the Independent Counsel could represent the United States and therefore there could be no controversy between the Attorney General purporting to represent the interests of the United States or even the Treasury Department

---

[5] That D.C. cannot sue the United States does not mean that *no* controversy is justiciable, the United States may resort to traditional common law *controls* over an errant corporate entity such as an action for mandamus, *certiorari*, or *quo warrento*.   That is not a sovereign suing itself, but a sovereign using traditional causes of action to control a corporate municipality. *See, e.g.*, *Rex v. City of London*, 8 Cobbett's State Trials 1039, 1264–72 (K.B. 1683).

acting as an agency thereof, there can be no controversy in a suit in which D.C. purports to act to vindicate sovereign power only the United States possesses. *See In Re Sealed Case*, 146 F.3d 1031, 1031–33 (D.C. Cir. 1998) (Silberman, J., concurring in denial of rehearing en banc).

Moreover, municipal corporations are generally barred from suing the State that created them.   As Justice Cardozo explained "[a] municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." *Williams v. Mayor and City Counsel of Baltimore*, 289 U.S. 36, 40 (1933); *accord Aguayo v. Richardson*, 473 F.2d 1090, 1101 (2d Cir. 1973) (per Friendly, J.) ("The City lacks standing to assert constitutional claims against the State").

The same venerable rule applies to efforts by municipal corporation to sue their creators in State courts:

> Despite their contrary claims, the traditional principle throughout the United States has been that municipalities and other local governmental corporate entities and their officers lack capacity to mount constitutional challenges to acts of the State and State legislation.   This general incapacity to sue flows from judicial recognition of the juridical as well as political relationship between those entities and the State.   Constitutionally as well as a matter of historical fact, municipal corporate bodies—counties, towns and school districts—are merely subdivisions of the State, created by the State for the convenient carrying out of the State's governmental powers and

18

responsibilities as its agents.  Viewed, therefore, by the courts as purely creatures or agents of the State, it followed that municipal corporate bodies cannot have the right to contest the actions of their principal or creator affecting them in their governmental capacity or as representatives of their inhabitants."

*City of New York v. State*, 86 N.Y.2d 286, 289–90 (N.Y. 1995).  This rule is longstanding and of general application.  *See, e.g.*, *Town of Mt. Pleasant v. Beckwith*, 100 U.S. 514, 524–25 (1879) ("Institutions of the kind, whether called cities, towns, or counties, are the auxiliaries of the State in the important business of municipal rule; but they cannot have the least pretension to sustain their privileges or their existence upon any thing like a contract between themselves and the legislature of the State, because there is not and cannot be any reciprocity of stipulation between the parties, and for the further reason that their objects and duties are utterly incompatible with every thing partaking of the nature of compact.").

    **3.**    To be sure, there are exceptions to the foregoing rules—for example in *ICC*, the Court tolerated the United States being on both sides of the v.  *See ICC*, 337 U.S. at 430.  (More on this later).  But none of them apply here.

    **a.**    To start, the political subdivision standing doctrine is subject to none of these exceptions and it controls.  The analysis should end there.

**b.** To be sure, D.C. has on occasion *sought* to sue the Federal Government. But in most of those instances, it was joined by private plaintiffs who had standing and the issue of D.C.'s standing was (somewhat pointedly) avoided. *See Banner*, 428 F.3d at 307 n.5; *Adams*, 90 F.Supp.2d at 45 n. 12. And in a somewhat odd case where the *United States* initiated the litigation in the different context of a property dispute, the Courts did not consider the question of standing (perhaps because the action was treated in the nature of an action in assumpsit to control a corporation via prerogative writ). *See United States v. District of Columbia*, 596 F.Supp. 725 (D. Md. 1984), *aff'd*, 788 F.2d 239 (4th Cir. 1986).

**b.** As to the *ICC* line of cases, those cases appear to rest on two rationales. First, *ICC* has generally been understood to turn on the fact that one looks through the named parties to determine the real parties in interest. *See, e.g.*, *Barnes v. Kline*, 759 F.2d 21, 64 (D.C. Cir. 1984) (Bork, J., dissenting). Here, there is no question that D.C. is the real party in interest as it trumpets that it sues as though it were a sovereign, so this rationale has no applicability.

Second, *ICC* and other cases routinely rest on the notion that independent agencies may sue each other by dint of fact that independent

agencies under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935) exist as though they are a floating Fourth Branch of Government that sits in parallel to the Executive and is not subject to full Presidential control. *See, e,g.*, *SEC*, 568 F.3d at 997 (Kavanaugh, J., concurring); *Barnes*, 759 F.2d at 64 (Bork, J., dissenting). To be sure, there is some intuitive appeal to analogy here at first blush—Home Rule in effect establishes D.C. as a quasi-independent agency. But that analogy breaks down when the nature of a "municipal corporation" is considered. It does not have a parallel dignity or enclave within the Executive Branch which when resolved in litigation manifests itself as a routine judicial controversy. *Cf. Shell*, 605 F.Supp at 1082 (asking whether inter-agency litigation is of the type "traditionally justiciable"). Rather, it is entirely *subordinate*. Unlike with an independent agency there is no need for a Court to referee a dispute between "equals" because the United States's absolute control and supremacy *always* prevails in a dispute with a mere municipal corporation.

### C.    There is no Harm to D.C. As Sovereign for Standing Purposes.

Even if D.C. can somehow get past the fact both that this case would be one of the United States impermissibly suing itself and the political subdivision standing doctrine, D.C. has another problem. It lacks harm for

standing purposes. Article III requires a showing of a sort of harm that was "'traditionally' recognized as providing a basis for a lawsuit in American Courts." *Trans Union LLC v. Rameriz*, 594 U.S. 413, 424 (2021) (citation omitted). But here the injury asserted is sovereign injury over a policy disagreement or to put it more narrowly as the District Court did from denial of statutorily delegated governmental authority. That injury cannot possibly be cognizable in that it does not exist; D.C. cannot be injured by insult to a sovereignty *it does not have*. And the historical record demonstrates that municipal corporations generally had little to no power to challenge the actions of their creators precisely for this reason. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 677 (2023) (rejecting stated theory of standing because" [t]he States have not cited any precedent, history, or tradition of courts ordering the Executive Branch to change its arrest or prosecution policies so that the Executive Branch makes more arrests or initiates more prosecutions."). In that sense the political subdivision standing doctrine is not only a rule of preclusion due to a lack of adverseness, but also one due to lack of cognizable injury. And finally, there is no longstanding tradition of suits by D.C. seeking to enforce sovereign (or delegated) power quo the United States. There have been many fights between D.C. and the Federal

Government, but they were resolved politically.  While someone directly and concretely aggrieved by the injuries D.C. complains of may well have sufficient concrete injury to challenge those actions (such as, for example, an arrest) D.C. itself does not because *it* was not injured.

**D.     The Original Public Meaning of the District Clause Supports This Conclusion.**

The original public meaning of the District Clause strongly supports a rule that D.C. cannot sue the United States.  As the D.C. Circuit explained in *Banner*:

> The evident purpose of granting Congress authority over the District was to provide the federal government a place where it would not be harassed or neglected by local interests. *See* The Federalist No. 43 (James Madison); 2 Joseph Story, Commentaries on the Constitution of the United States § 1219 (5th ed. 1891) (suggesting that Pennsylvania's refusal to defend the Continental Congress from an angry crowd of disbanded but unpaid Revolutionary War soldiers ultimately led to inclusion of the District Clause).

*Banner*, 428 F.3d at 309.  Of additional note, the first mention of what became the District Clause by Colonel Mason was grounded not only in this concern, but in a desire to avoid "disputes concerning jurisdiction."  James Madison, *Notes of Debates in the Federal Convention* 378 (1987 ed.).  As then-Judge Taft explained, this is why the Government of the District of Columbia *necessarily* is National:

23

> It was meet that so powerful a sovereignty should have a local habitation the character of which it might absolutely control, and the government of which it should not share with the states in whose territory it exercised but a limited sovereignty, supreme, it is true, in cases where it could be exercised at all, but much restricted in the field of its operation. The object of the grant of exclusive legislation over the district was, therefore, national in the highest sense, and the city organized under the grant became the city, not of a state, not of a district, but of a nation.

*Gunther v. Wright*, 75 F. 742, 757 (6th Cir. 1896). Thus, it is said that even when Congress "legislates for the District" it "acts as a legislature of national character." *Neild*, 110 F.2d at 246, 250. This is part and parcel of why under the Home Rule Act, the President retains complete control over the D.C. National Guard (Opposition at 6, 17 (ECF No. 34)) and has power to request "services" from the Metropolitan Police Department. *Id.* at 39.

This demolishes the District Court's "injury to national control" theory. Even under D.C.'s hyper-aggressively plead case, the Federal Government is categorically *in control*. If the Federal Government wishes to exclude State National Guards it has obvious power to do so—that is the very point of command and control arrangements about which D.C. so aggressively complains.

D.C.'s proposed rule of a "sovereign power" able to rush to Court, sue the entity that gives it its existence, and then demand a coordinate branch of

24

Government adjudicate any dispute of any sort it may have with the United States would do violence to this original public meaning in which National interest controls. There would be a barrage of litigation. Anytime D.C. did not like an action taken by the Federal Government it could immediately resort to litigation—potentially bringing the governance of the Capitol into a standstill via constant pitched battles at the courthouse. Indeed, we have seen this play out recently. Because President Trump believes bold national action is necessary (and Congress agrees with him), this conflict will likely continue. The normal structural incentives for cooperation, or for that matter, a more permanent and coherent solution derived from "the hurly-burly, the give-and-take of the political process between the legislative and the executive'" are entirely vitiated. *Trump v. Mazars*, 591 U.S. 848, 859 (2018) (quoting *Hearings on S. 2170 et al. before the Subcommittee on Intergovernmental Relations of the Senate Committee on Government Operations*, 94th Cong., 1st Sess., 87 (1975) (A. Scalia, Assistant Attorney General, Office of Legal Counsel)). And again, the structural imperative is one of ultimate federal control with political—not *judicial*—resolution of disputes. As the D.C. Circuit explained, in a related context, "[t]he Framers would naturally have expected that where tensions between local and

25

national interests arose, *they could be resolved by Congress* with due consideration for the latter." *Banner*, 428 F.3d at 309 (emphasis added)..

If there is power in an Article III Court to adjudicate this case there will be more litigation; no longer will the political process resolve conflicts—the courts will. Indeed, depending on how the merits of this case transpire, there may be extended judicial involvement and policing. *Cf.* Trans. of Hr'g at 58:3–14, *District of Columbia v. Trump*, No. 25-cv-2678 (ACR) (Aug 15, 2025) (contemplating continued judicial involvement). That is entirely inconsistent with the design and original public meaning of the District Clause.

## III.   D.C. LACKS AUTHORITY TO BRING THIS ACTION.

1.   Congress has limited the power of D.C. to litigate via its grant of corporate power to "sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this Code." D.C. Code § 1-102.

This power does not remotely extend to initiating litigation against the United States as a putative sovereign that raises the profound Constitutional questions of standing recounted above and that is contrary to the political subdivision standing doctrine.

26

To start, if the statute is susceptible of a construction that does not raise the serious Constitutional question discussed above, then it should be adopted. *See* Scalia & Gardiner, *Reading Law* 197 (2012).

The statutory text is indeed broad in its the general authorization to "sue," but it contains the modifier "not inconsistent with the Constitution and laws of the United States and the provisions of this Code." That modifier suggests that limitations discussed above are baked in as a matter of statutory construction and the law of municipal corporations. Put differently, if the Constitutional concern discussed above is real, there is no question that a reasonable construction of the statute would be that "sue" does not extend to the Federal Government.

The relevant statutory provision has been the law since 1878 and repeated construction by the Supreme Court does not seem to remotely contemplate the grant of the power asserted here. *See* 20 Stat 102 (1878). Moreover, in 1878 (when the language was drafted) the application of Dillon's Rule, that grants of power to a municipal corporation must be express, would give "sue" a narrow ambit that would exclude suing the body that gave the corporation existence contrary to long standing law. *See* John F. Dillon, *Treatise on the Law of Municipal Corporations* 101–02 (1878). Doubly so

27

with the limiting clause. Indeed, the Court was at pains *not* to construe a virtually identical grant of authority in the 1871 Organic Act, 16 Stat. 419, as authorizing D.C. to legislate in an area that would likely be considered (and that the Court found) to be an unconstitutional regulation of interstate commerce. *See Stoutenburgh v. Hennick*, 129 U.S. 141, 149 (1889) ("In our judgment congress, for the reasons given, could not have delegated the power to enact the third clause of the twenty-first section of the act of assembly, construed to include business agents such as Hennick, and there is nothing in this record to justify the assumption that it endeavored to do so, for the powers granted to the District were municipal merely."). Such a barren historical record is not dispositive, but again counsels against finding that the power to "sue" (as modified) extends to actions against the United States. *Cf., e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (courts should hesitate to find implied causes of action).

Moreover, there is no clear historical basis for action by a municipal corporation of the sort contemplated here. As noted above, the history is decidedly to the contrary.

**2.**    By the same token, D.C. certainly lacks a cause of action as to its free standing Constitutional Claims premised on the District Clause. There

28

is no basis whatsoever to think such relief has the requisite historical pedigree in courts of equity in Westminster Hall. *See Groupo Mexciano v. All Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).

## CONCLUSION

The judgement below should be reversed and this case remanded for dismissal for want of jurisdiction.

Dated: December 3, 2025                    Respectfully submitted,

                                    /s/ Samuel Everett Dewey

                                    SAMUEL EVERET DEWEY
                                    Chambers of Samuel Everet Dewey
                                    LLC
                                    2200 12th Court North Apt. 609
                                    Arlington VA  22201
                                    (703) 261-4194

29

# CERTIFICATE OF COMPLIANCE

1.    This document complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the portions of the brief exempted by Fed. R. App. P. 32(f), this document contains 6,462 words.

2.    This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook typeface.

*/s/ Samuel Everett Dewey*

30

## CERTIFICATE OF SERVICE

The undersigned certifies that, on this 3d day of December 2025 I filed the foregoing motion using this Court's Appellate CM/ECF system, which effected service on all parties.

*/s/ Samuel Everett Dewey*

31