No. 25-5418

In the United States Court of Appeals for the District of Columbia Circuit

---

DISTRICT OF COLUMBIA,
*Plaintiff- Appellee,*

*v.*

DONALD J. TRUMP, ET AL.
D*efendants-Appellants.*

---

On Appeal from the United States District
Court for the District of Columbia

---

**BRIEF OF AMICUS THE OVERSIGHT PROJECT**

---

JEFFREY BOSSERT CLARK

The Oversight Project
211 N. Union St
Alexandria, VA 22314
Email:  jeff@itsyourgov.org

SAMUEL EVERETT DEWEY
*Counsel of Record*
Chambers of Samuel Everett Dewey LLC
2200 12th Court North Apt. 609
Arlington VA 22201
(703) 261-4194
Email:  Samueledewey@sedchambers.com

## CERTIFICATION

Amicus the Oversight Project certifies as follows:

The Oversight Project has no parent entity and no entity has a greater than 10 percent ownership interest in The Oversight Project. The Oversight Project is a 501(c)(4) nonprofit organization dedicated to preserving American freedom by ensuring government is and remains responsible, accountable, and transparent.

Pursuant to Federal Rule of Appellate Procedure 29 (a)(4)(E) Amicus certifies that no party or their counsel participated in the drafting of this brief in whole or in part or funded this brief in whole or in part.

Pursuant to D.C. Circuit Rule 29, Amicus hereby submits this certificate.

**A. Parties and Amici**.

The parties and amici who have appeared before the Court are listed in Defendants-Appellants' D.C. Circuit Rule 28(a)(1) certificate.

**B. Rulings Under Review.**

The ruling under review is an opinion and order granting a preliminary injunction and 5 U.S.C. § 705 stay. The opinion and order

are attached to Defendants-Appellants' motion.

### C. Related Cases.

There are no related cases.

All parties consent to the filing of this brief.

# TABLE OF CONTENTS

CERTIFICATION ...................................................................................... i

TABLE OF CONTENTS ....................................................................... iii

TABLE OF AUTHORITIES...................................................................... v

INTEREST OF AMICI CURIAE .......................................................... ix

INTRODUCTION ................................................................................... 1

PRIOR PROCEEDINGS......................................................................... 3

SUMMARY OF ARGUMENT................................................................. 5

ARGUMENT ........................................................................................... 8

   I.  D.C. PURPORTS TO SUE AS SOVEREIGN............................................ 8

   II. D.C. LACKS ARTICLE III STANDING TO SUE THE UNITED
      STATES................................................................................................ 10

      A. D.C. Exists Solely As a Municipal Corporation Created by the United
         States; It Has No Sovereign Power to Vindicate Under Article ....... 10

      B  History and Tradition Foreclose D.C.'s Standing Theory. ................ 15

      C. A Municipal Corporation Created by the United States Cannot Sue
         the United States. ............................................................................ 17

      D. The Original Public Meaning of the District Clause Supports This
         Conclusion. ..................................................................................... 23

   III.   D.C. LACKS AUTHORITY TO BRING THIS ACTION.................... 27

CONCLUSION ................................................................................... 29

CERTIFICATE OF COMPLIANCE .................................................. 31

CERTIFICATE OF SERVICE ........................................................... 32

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Clinton*, 90 F.Supp.2d 35 (D.D.C. 2000) (3 Judge Court) ......... 12, 20

*Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973) .................................... 22

*Alexander v. Sandoval*, 532 U.S. 275, (2001) ................................................ 29

*Banner v. United States*, 428 F.3d 303 (D.C. Cir. 2005) .... 12, 15, 20, 23, 24, 26

*Barnes v. District of Columbia*, 91 U.S. (1 Otto) 540 (1875 ...................... 14, 19

*Barnes v. Kline*, 759 F.2d 21 (D.C. Cir. 1984) ................................................ 21

*City of New York v. State*, 86 N.Y.2d 286 (N.Y. 1995) ................................... 23

*Corp. of Georgetown v. United States*, 30 F.Cas. 1053 (C.C.D.C. 1858) (No. 18,281) ................................................................................................. 14

*Croson v. District of Columbia*, 2 F.2d 924 (D.C. Cir. 1924) .......................... 11

*Def. Supplies Corp. v. U.S. Lines Co.*, 148 F.2d 311 (2d Cir. 1945) ............... 17

*Dir., Off. Of Workers' Comp. Prog. Dept of Labor v. Newport News Shipbuilding and Dry Dock Co.*, 514 U.S. 122 (1995) ................................. 19

*District of Columbia v. Exxon Mobil Oil Corp.*, 172 A.3d 412 (D.C. 2017) ..... 12

*District of Columbia v. John. R. Thompson Co.*, 346 U.S. 100 (1953) ............ 19

*District of Columbia v. Trump*, No. 25-5418, 2025 WL 36736774 (D.C. Cir. Dec. 17, 2025) ........................................................ 5, 10, 11, 12, 13, 15, 16

*Emp. Welfare Comm v. Daws*, 559 F.2d 1375 (5th Cir. 1979) ....................... 18

*Globe & Rutgers Fire Ins. Co. v. Hines*, 273 F. 774 (2d Cir. 1921) ................ 18

*Groupo Mexciano v. All Bond Fund, Inc.*, 527 U.S. 308 (1999) ..................... 29

*Gunther v. Wright*, 75 F. 742 (6th Cir. 1896) .................................................. 24

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) .......................... 21

*In Re Sealed Case*, 146 F.3d 1031 (D.C. Cir. 1998)........................................ 20

*Juliano v. Fed. Asset Disposition Ass'n*, 736 F.Supp 348 (D.D.C. 1990) ........ 18

*Kendall ex rel. Stokes v. United States*, 37 U.S. (12 Pet.) 524 (1838) ............. 11

*Landmark Co., Inc. v. FDIC*, 256 F.3d 1365 (Fed. Cir. 2001)......................... 18

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) ............................................... 10

*Metropolitan R. Co. v. District of Columbia*, 132 U.S. 1 (1889)............... 12, 14

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)......... 11

*Neild v. District of Columbia*, 110 F.2d 246 (D.C. Cir. 1940) ................... 12, 24

*Rex v. City of London*, 8 Cobbett's State Trials 1039 (K.B. 1683) .................. 19

*SEC v. Fed. Labor Relations Authority*, 568 F.3d 990 (D.C. Cir. 2009) ... 18, 21

*Stoutenburgh v. Hennick*, 129 U.S. 141 (1889) .............................................. 29

*Town of Mt. Pleasant v. Beckwith*, 100 U.S. 514 (1879) ................................. 23

*Trump v. Mazars*, 591 U.S. 848 (2018)........................................................... 26

*Trump v. Slaughter*, 146 S. Ct. 18 (2025)....................................................... 22

*U.S. Postal Service v. Postal Regulatory Comm'n*, 963 F.3d 137 (D.C. Cir.
    2020) .......................................................................................................... 18

*United State ex rel. Daly v. MacFarland*, 28 App. D.C. 552 (D.C. Cir. 1907)  14

*United States ex rel. for the Use of Tenn. Val. Authority v. Easement and Right of Way over Certain Land in Bedford County, Tenn.*, 204 F.Supp. 837 (E.D. Tenn. 1962) ....................................................................................... 18

*United States ex rel. Kerr v. Ross*, 5 App. D.C. 241 (D.C. Cir. 1895) ............. 14

*United States v. Budd*, 23 F.3d 442 (D.C. Cir. 1994) ...................................... 11

*United States v. District of Columbia*, 596 F.Supp. 725 (D. Md. 1984).......... 20

*United States v. ICC*, 337 U.S. 426 (1949) ..........................................17, 20, 21

*United States v. Johnson*, 410 F.3d 137 (4th Cir. 2005) .................................. 8

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988)....................... 20

*United States v. Shell Oil Co.*, 605 F.Supp. 1064 (D. Colo. 1985)............. 18, 21

*United States v. Texas*, 599 U.S. 670 (2023).................................................. 15

*Ward v. District of Columbia*, 494 A.2d 666 (D.C. 1985) ............................... 13

*Williams v. Mayor and City Counsel of Baltimore*, 289 U.S. 36 (1933).......... 22

**Statutes**

20 Stat 102 (1878) .................................................................................. 13, 28

32 U.S.C. § 314(b) ....................................................................................... 25

D.C. Code § 1-102.................................................................................6, 13, 27

D.C. Code § 1-207.17(a)............................................................................ 6, 13

D.C. Code § 1-207.40(a)................................................................................ 25

D.C. Code §§ 49-301(a)................................................................................. 25

Organic Act, 16 Stat. 419 (1871) ................................................................. 28

U.S. Const. Art. I. § 8 Cl. 17 ................................................................... 11, 19

U.S. Const. Art. II § 1 cl. 1.............................................................................. 7

U.S. Const., art I., § 8, cl. 17.......................................................................... 26

**Other Authorities**

*Constitutionality of the Nuclear Regulatory Commission's Imposition of Civil Penalties on the Air Force,* 13 Op. OLC 131 (1989) ...................................... 18

H.R. 4922 (2025) ............................................................................................. 8

H.R. 5125 (2025) ............................................................................................. 8

H.R. 5140 (2025) ............................................................................................. 8

H.R. 5143 (2025) ............................................................................................. 8
James Madison, *Notes of Debates in the Federal Convention* 378 (1987 ed.). 24

John F. Dillon, *Treatise on the Law of Municipal Corporations* 101–02 (1878) ...................................................................................................................... 28

*See* Scalia & Gardiner, *Reading Law* 197 (2012) ......................................... 27

## INTEREST OF AMICUS CURIAE

The Oversight Project is a not-for-profit 501(c)(4) organization dedicated to preserving American freedom by ensuring government both is and remains responsible, accountable, and transparent.

## INTRODUCTION

Who has power over the District of Columbia?[1]  Make no mistake.  That is what this case is about.  At the end of the day, this case is nothing more than profound political disagreement over how the District of Columbia is governed.  The proper places to remedy that disagreement are in the halls of Congress and ballot boxes across the Country—not the courthouse.

Congress and President Donald J. Trump have been clear—the District of Columbia is ultimately under Federal control.  They are correct.  In their judgment, crime has reached unacceptable levels, and the District of Columbia has descended to a city unbefitting its role as our Nation's Capital.  The President decided to do something about it—particularly with America 250 fast approaching.  He is well within his powers to do so.  And what is more, everyone in the District of Columbia knows the President's actions have worked—crime is down and beautification is up.

There is nothing odd or unusual about the President's actions here.  For almost 100 years the municipal corporation that is D.C. was governed—and governed well—by three presidentially appointed Commissioners.  Home

---

[1]  We use the term District of Columbia to refer to the geographic region as opposed to the local government thereof which we signify by D.C.

Rule is an aberration of dubious legality that has failed spectacularly. Not surprisingly, D.C. submits otherwise. They say Home Rule is essential; indeed, D.C. should be a State and freed from "colonial" governance.

To be sure, under the principles of federalism, any State or city within a State may choose policies that run in tension with the policies of the Federal Government. But the District of Columbia is *not* a State, nor is it part of one. The District of Columbia must be governed in a way that is responsive to the *National* Will. The Constitution mandates it, for the Federal Government has *plenary* power over the District of Columbia.

But how can D.C. possibly be run by the National Will when a local government that has a different view can simply rush into Federal Court, play acting as a political equal, while hiding behind an ersatz federalism as if it were a pre-constitutional sovereign state instead of a constitutional inferior enclave totally subordinate to the Federal Government? It cannot. This would touch off a cycle of "governing by lawsuit" in which every dispute between D.C. and the National Government would be marked not by political resolution, but by an effort to draw the courts into the resulting political questions.[2] We have seen that already—an unprecedented explosion of

---

[2] Given that the District of Columbia is dominated by one-party home rule,

litigation simply because D.C. strongly disagrees with President Trump's indisputably national priorities for the District of Columbia.

Article III Courts have no business wading into this power struggle. This case should not be here. There is no standing. This Court lacks jurisdiction because D.C. lacks power to sue the United States to vindicate its subordinate interests.

## PRIOR PROCEEDINGS

1.    The District Court correctly acknowledged the bedrock premise that it "must assure itself of its jurisdiction and confirm that the District has standing to bring its challenges." JA820. But then it engaged in the worst sort of drive-by standing analysis; ignoring *Amicus'* brief below. In the end, the District Court conducted its own power grab: Establishing (contrary to hundreds of years of precedent) that it—and only it—has power to *finally* resolve disputes between the federal government and the District.

The District Court summarily concluded that the "District can establish standing based on injuries to its sovereign power to govern itself and to the statutory rights afforded to it under the D.C. Code." JA822.

this is a one-way ratchet; the conflict almost always occurs only when a Republican Administration is in power. That exacerbates the problem, as it is not merely a misalignment of national to local interests, but a perpetual repudiation of the National Will only in one political direction.

First, the District Court held that "the District is injured by Defendants' deployment of the DCNG and out-of-state National Guards because Defendants' actions usurp the District's rights to self-governance." *Id.* The District Court summarily reasoned that "because Congress delegated its exclusive authority over the District to the District government and its local elected representatives" and "[u]nder D.C. law, the District has a right to govern itself and to determine how to enforce laws in the District," that therefore "[t]he District may not be a sovereign like a state is, but it can nevertheless exercise delegated sovereign powers and is therefore injured by being unlawfully deprived of those powers." *Id.*

Second, the District Court found that "the District suffers a distinct injury from the presence of out-of-state National Guard units—an injury to its constitutional status as a federal district free from state interference." *Id.* at JA823. To the District Court's mind, because of Home Rule, any National Guard deployment without the District's consent would "violate the District's right to be free from state influence by forcing the D.C. government to share power with state governors commanding Guard units." *Id.*

Third, the District Court found "that the District has demonstrated irreparable harm from Defendants' infringements on its ability to exercise sovereign powers within its jurisdiction."  JA864.

2.    The Government sought a stay pending appeal that was granted on the merits by a unanimous motions panel.  *See District of Columbia v. Trump*, No. 25-5418, 2025 WL 36736774 (D.C. Cir. Dec. 17, 2025) ("*Stay Decision*").    Circuit Judge Rao, joined by Circuit Judge Katsas wrote separately "to highlight an additional reason the President and other federal officials are likely to succeed on the merits of their appeal: the District of Columbia may lack Article III standing to challenge the deployment of National Guard troops in the District."  *Id.* at *13 (Rao, J., concurring).  The majority of the motions panel concluded its analysis by noting that although neither party objected to jurisdiction, "Article III courts, of course, have an independent obligation to verify their jurisdiction" and therefore "[i]n subsequent proceedings, this important jurisdictional question should be given further consideration."  *Id.* at *14.

## SUMMARY OF ARGUMENT

1.    To start, the Government of D.C. simply is *not* a "sovereign."  *All* Sovereign power rests in the United States.  D.C. is not a State.  D.C. is but

"a body corporate for municipal purposes" (D.C. Code § 1-102)—largely similar to any other city in the United States.  Home Rule is irrelevant to this basic foundational construct.  *See* D.C. Code § 1-207.17(a).  What *is* different about D.C. is that it exists *entirely* as a creation of the Federal Government. It has no independent existence beyond what the Federal Government chooses to grant it.

**2.a.**  Since D.C. has no sovereign power, it cannot suffer injury within the meaning of Article III as a sovereign.  And because D.C. is a mere corporation created by the Federal Government, D.C. suffers no judicially cognizable injury, even if it was "unlawfully deprived" of its right to exercise powers delegated by the Federal Government.  JA822.

**b.**    Moreover, D.C. lacks standing for two additional separate and independent reasons.  To start, one cannot sue oneself.  And that is what this case ultimately is—the United States suing itself.  Moreover, it is a foundational principle of the law that a municipal corporation cannot sue its sovereign creator.

**3.**    The District Court's alternative theory—that Home Rule somehow delegated to D.C. standing to sue to defend the *national* character of the District of Columbia—implodes under even cursory analysis.  To start, the

Federal Government wields *plenary power* in the District.  So this is much ado about nothing.  Moreover, it is passing strange to say that the *national* power of the District is preserved by allowing the passions of local residents to overcome the clear wishes of the President, one of only two officials elected by the whole Nation, and the sole official in whom all "executive Power" is "vested".  U.S. Const. Art. II § 1 cl. 1.  (Not to mention Congress, which agrees with the President here.).

4.    This Court need not even reach the standing question.  Under a fair reading of D.C.'s basic corporate power to "sue," it does not authorize the D.C. Attorney General to sue the Federal Government.  This Court can and should end this case there.

5.    By the same logic, D.C. lacks an equitable cause of action against the federal government to assert a constitutional claim.  Such an action is not only unknown to the common law, it was basically unheard of until the last few years.

6.    That does not mean there is *no* remedy should D.C. feel itself aggrieved.  It—like any other citizen or corporation—has full power to petition Congress and the President for redress of grievances.  And it is uniquely positioned through its existing municipal infrastructure to resort to

the "hurly-burly" of politics and media.  This is why it has a Delegate in the United States House of Representatives.

Indeed, the underlying substantive issues here have already been hotly debated by the political branches.  D.C. has repeatedly made its case to Congress.  But Congress agreed with the President.[3]  It is precisely because D.C. *lost* before the Nation's political Branches that it turns to the counter-majoritarian Branch to nullify the will of the President and Congress.  But the Judiciary need not resolve every dispute.  Many matters are meant to be worked out through politics—not law.

Moreover, at least *some* claims advanced here by D.C. can be advanced by private parties suffering from specific and concrete injury.  *See, e.g.*, *United States v. Johnson*, 410 F.3d 137, 149 (4th Cir. 2005) (adjudicating a *posse comitatus* claim via suppression motion).

## ARGUMENT

## I.    D.C. PURPORTS TO SUE AS SOVEREIGN.

D.C. is acting as if it were a State.  D.C. has brought this action to vindicate its "sovereign" interest.  In every way possible it sets itself up as

---

[3]  *See, e.g.*, H.R. 4922 (2025), H.R. 5140 (2025), H.R. 5143 (2025), H.R. 5125 (2025).

akin to a sovereign State resisting Federal encroachment. *See, e.g.,* Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction at 2, *District of Columbia v. Donald J. Trump et al.*, No. 25-cv-3005 (JMC) (D.D.C. Sept. 9, 2025) (ECF No. 3-1) ("Every day that this lawless incursion continues, the District suffers harm to its sovereign authority to conduct local law enforcement as it chooses."); *id.* at 23 ("Nothing in the Home Rule Act gives other states the authority to engage in law enforcement in the District. And it is a basic precept of our federal system that states may not exert their sovereign authority beyond their borders without the receiving jurisdiction's consent."); *id.* at 24 ("And, indeed, no other President has attempted to deploy non-federalized National Guard troops to a jurisdiction absent "coordination with or [a] request from the supported State."); *id.* at 27 ("In our federal system, it is a bedrock principle that one state may not "invade" another without its consent."); *id.* at 41 ("This intrusion has inflicted a substantial sovereign injury, by depriving the District of one of the core rights of self-government afforded in the Home Rule Act: the authority to control law enforcement operations in the District."); *id.* ("This loss of sovereign authority and control is itself irreparable.").

9

Moreover, D.C. has brought this suit because it disagrees with prudential wisdom of the President's actions. "The District's elected leaders did not invite these troops and do not believe their presence is in the best interests of the District." *Id.* at 1.

## II.   D.C. LACKS ARTICLE III STANDING TO SUE THE UNITED STATES.

### A.   D.C. Exists Solely As a Municipal Corporation Created by the United States; It Has No Sovereign Power to Vindicate Under Article

D.C. is not a sovereign and thus cannot proceed to litigate a policy disagreement against its parent sovereign. As the motions panel put it, "[w]e have never recognized that the District possesses an independent sovereignty that can give rise to an Article III injury from actions of the federal government. Such an injury is likely untenable as a matter of first principles and finds no support in our precedent or historical practice." *Stay Decision*, at *13. At its core, the District Court's judgment is fatally flawed due to its failure to grapple with this self-evident legal proposition.[4]

The text of the Constitution is explicit as to where all sovereignty

---

[4] D.C. would also turn the *parens patrie* notion of sovereign injury on its head. Even if D.C. did have State like dignity it is still a federal enclave and the thus, the federal government has the superior right to represent (be the parent) of the people, and to represent all the people. *See, e.g.*, *Massachusetts v. Mellon*, 262 U.S. 447 (1923).

within the District of Columbia resides: *"The Congress* shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States." U.S. Const. Art. I. § 8 cl. 17 (emphasis added). "Congress has the entire control over the district for every purpose of government" (*Kendall ex rel. Stokes v. United States*, 37 U.S. (12 Pet.) 524, 619 (1838)), and "thus, necessarily, the Executive and Judicial powers as well as the Legislative." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 76 (1982). As the motion panel explained, "[w]e have long recognized that the District enjoys no sovereign status separate from the federal government." *Stay Decision*, at *13; *accord United States v. Budd*, 23 F.3d 442, 447 (D.C. Cir. 1994) ("violations of the District of Columbia Code and of the United States Code are both "crimes against a single sovereign, namely, the United States."" (internal citation omitted)); *Croson v. District of Columbia*, 2 F.2d 924, 924 (D.C. Cir. 1924) ("The District of Columbia, as a municipal corporation, has the right to sue and be sued, but it possesses no sovereign power.").[5]

---

[5] The D.C. Court of Appeals has recently used the term "sovereign" loosely

"[T]he Supreme Court has explained that the District's 'sovereign power . . . is not lodged in the corporation of the District of Columbia, but in the government of the United States.'" *Stay Decision*, at *13 (Rao, J., concurring) (quoting *Metropolitan R. Co. v. District of Columbia*, 132 U.S. 1, 9 (1889)). "Congress is not a foreign sovereign government in relation to the District, as the New Jersey legislature is to New York; Congress *is* the District's government, *see* U.S. Const. art. I, § 8, cl. 17." *Banner v. United States*, 428 F.3d 303, 309 (D.C. Cir. 2005).[6]

Moreover, when Congress created D.C., it made the deliberate choice to stand it up as a municipal corporation, a highly subordinated form of local government:

> The District is created a government by the name of the "District of Columbia," by which name it is constituted a body corporate for municipal purposes, and may contract and be contracted with, sue and

and even gone so far as to suggest that D.C. "is a sovereign for many purposes." *District of Columbia v. Exxon Mobil Oil Corp.*, 172 A.3d 412, 422 (D.C. 2017). But that is besides the point, *actual* sovereignty is a question of federal law.

[6] It is for this (among other) reasons that courts have repeatedly rejected treating the District of Columbia as a State (unless Congress has definitionally modified that term in statute). *See, e.g.*, *Neild v. District of Columbia*, 110 F.2d 246, 249 n.3 (D.C. Cir. 1940) (collecting authorities holding D.C. is not a State); *Adams v. Clinton*, 90 F.Supp.2d 35, 46–47 (D.D.C. 2000) (Three-Judge Court), *aff'd*, 531 U.S. 941 (2000) (Mem.).

12

> be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this Code.

D.C. Code § 1-102. This statue has existed in identical form since 1878. *See* 20 Stat 102 (1878). Thus, D.C. has only the power of a "municipal corporation" and Congress has expressly reserved its plenary power. *See* D.C. Code § 2-306.01. Pointedly, the Home Rule Act did not alter this framework, but adhered to it. *See, e.g.*, D.C. Code § 1-207.17(a) ("The District of Columbia shall *remain and continue* a body corporate." (emphasis added)); *Stay Decision*, at *13; *Ward v. District of Columbia*, 494 A.2d 666, 668–69 (D.C. 1985) (*dicta*).

It is no answer to this to say, as the District Court did, that even though D.C. is not as sovereign, "[u]nder D.C. law, the District has a right to govern itself and to determine how to enforce laws in the District." JA822. To be sure, while D.C. may lawfully act in its limited municipal sphere of delegated powers *as against regulated private parties*, delegated powers are just that— delegated; they do not confer *any* sovereignty. As the Supreme Court explained long ago:

> It is undoubtedly true that the District of Columbia is a separate political community in a certain sense, and in that sense may be called a state; but the sovereign power of this qualified state is not lodged in

the corporation of the District of Columbia, but in the government of the United States. Its supreme legislative body is congress. The subordinate legislative powers of a municipal character, which have been or may be lodged in the city corporations, or in the District corporation, do not make those bodies sovereign.

*Metropolitan R. Co. v. District of Columbia*, 132 U.S. 1, 9 (1889); *see also Barnes v. District of Columbia*, 91 U.S. (1 Otto) 540, 544 (1875); *United State ex rel. Daly v. MacFarland*, 28 App. D.C. 552, 558 (D.C. Cir. 1907) ("It is well settled that the District of Columbia has no legislative power, it being merely a municipal corporation bearing the same relation to Congress that a city does to the legislature of the State in which it is incorporated."); *United States ex rel. Kerr v. Ross*, 5 App. D.C. 241, 253 (D.C. Cir. 1895) ("The District itself is a municipal corporation, and its governing body of officers, the Commissioners, exercise powers, under the supreme control of Congress, analogous to those ordinarily delegated to the mayor and council of the municipal corporations organized generally under the laws of the States."). Indeed, so complete is the federal government's control that a Circuit Court saw no difficulty with it proceeding by indictment (as a form of prerogative writ) to control a predecessor of D.C. *See Corp. of Georgetown v. United States*, 30 F. Cas. 1053 (C.C.D.C. 1858) (No. 18,281).

The District Court's attempt to frame the issue less as one of actual

14

sovereignty and more one of some form of a violation of a statutory "right[] to self-governance" and thus impairment or violation of a delegations of sovereign power is a distinction without a difference. JA822. D.C. has no sovereignty, so it cannot complain of any sovereign encroachment. Even if Congress's power *may* have been delegated, and D.C.'s statutory delegation *may* have in fact been infringed, there still is no sovereign harm qua sovereign harm. Thus, there is no *sovereign* injury that is *judicially* cognizable. *Cf. Banner*, 428 F.3d at 309 ("[t]he Framers would naturally have expected that where tensions between local and national interests arose, *they could be resolved by Congress* with due consideration for the latter." (emphasis added)).

### B    History and Tradition Foreclose D.C.'s Standing Theory.

**1.** As the motions panel explained, "[t]he Supreme Court has repeatedly emphasized that 'history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider.'" *Stay Decision*, at *13 (Rao, J., concurring) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (cleaned up)). *See also e.g.*, *United States v. Texas*, 599 U.S. 670, 677 (2023) (rejecting stated theory of standing because" [t]he States have not cited any precedent, history, or tradition of courts ordering

15

the Executive Branch to change its arrest or prosecution policies so that the Executive Branch makes more arrests or initiates more prosecutions."). This showing is required even in the context of State, where the Supreme Court has "occasionally recognized sovereignty-based injuries," and thus applies "perforce to the District, which, unlike a State, enjoys no constitutional or statutory sovereignty separate from the federal government." *Stay Decision*, at *13 (Rao, J., concurring).

2.      Here the injury asserted is sovereign injury over a policy disagreement, or to put it more narrowly as did the District Court, sovereign injury ostensibly stemming from denial of statutorily delegated governmental authority. As the motions panel made clear, there is *zero* history supporting such a standing theory: "While Congress has provided the District with a certain degree of self-governance, we have never recognized that the District has standing to sue the President and federal officers for sovereignty-based injuries." *Stay Decision*, at *13 (Rao, J., concurring). This is particularly telling in that there have been many fights between D.C. and the federal government, but none were resolved in court. They were resolved politically. While someone directly and concretely aggrieved by the injuries D.C. complains of may well have sufficient concrete injury to challenge those

16

actions (such as, for example, an arrest), D.C. itself does not possess standing because *it* was not injured.

Not only is the foregoing fatal, but the historical record actually cuts overwhelmingly *against* finding standing this case. As explained below, the long-extant municipal subdivision standing doctrine precludes a municipality from suing its creator. And it has long been the case that a sovereign cannot sue itself. That historical record destroys any possible theory of standing here.

### C.    A Municipal Corporation Created by the United States Cannot Sue the United States.

Even if D.C. could get past the fact that it has no sovereign standing and somehow assert some sort of "delegated" injury, standing here is precluded by: (1) the fact that a sovereign cannot sue itself (regardless of delegations); and (2) the municipal subdivision standing doctrine precludes a municipality suing its creator.

1. Start with the basic (and unremarkable) "long-recognized general principle that no person may sue himself." *United States v. ICC*, 337 U.S. 426, 427 (1949); *accord Def. Supplies Corp. v. U.S. Lines Co.*, 148 F.2d 311, 312 (2d Cir. 1945). That principle is one of Article III standing. *See, e.g.*, *ICC*, 337 U.S. at 429; *Def. Supplies Corp.*, 148 F.2d at 313.

The principle applies fully to the United States.  As then-Circuit Judge Kavanaugh explained, "because agencies involved in intra-Executive Branch disputes are not adverse to one another (rather, they are both subordinate parts of a single organization headed by one CEO), such disputes do not appear to constitute a case or controversy for purposes of Article III." *SEC v. Fed. Labor Relations Auth.*, 568 F.3d 990, 997 (D.C. Cir. 2009) (Kavanaugh, J., concurring); *accord U.S. Postal Service v. Postal Reg. Comm'n*, 963 F.3d 137, 143–44 (D.C. Cir. 2020) (Rao, J., concurring); *Constitutionality of the Nuclear Regulatory Commission's Imposition of Civil Penalties on the Air Force*, 13 Op. OLC 131, 138 (1989).  Courts have long dismissed such lawsuits for lack of Article III standing regardless of whether they involved the Government itself, agencies, or components of agencies.  *See, e.g.*, *Landmark Co., Inc. v. FDIC*, 256 F.3d 1365, 1380 (Fed. Cir. 2001); *Emp. Welfare Comm v. Daws*, 559 F.2d 1375, 1377–78 (5th Cir. 1979); *Globe & Rutgers Fire Ins. Co. v. Hines*, 273 F. 774 (2d Cir. 1921); *Juliano v. Fed. Asset Disposition Ass'n*, 736 F.Supp 348, 352–53 (D.D.C. 1990); *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1083 (D. Colo. 1985); *United States ex rel. for the Use of TVA v. Easement and Right of Way Over Certain Land in Bedford County, Tenn.*, 204 F. Supp. 837, 839 (E.D. Tenn. 1962).  This rule applies in spades

18

when the matters in dispute are questions of policy as opposed to action as a market participant. *See, e.g.*, *Dir., Off. of Workers' Comp. Prog. Dept of Labor v. Newport News Shipbuilding and Dry Dock Co.*, 514 U.S. 122, 128–29 (1995).

**2.** This long-standing rule applies *a fortiori* to D.C. suing the federal government. D.C.'s existence as municipality is wholly dependent on the federal government; without the federal government's consent after the cession of the territory by the States as contemplated in the Seat of Government Clause, D.C. does not exist. *See, e.g.*, U.S. Const. Art. I, § 8 cl. 17; *District of Columbia v. John. R. Thompson Co.*, 346 U.S. 100, 108 (1953) (theory of Home Rule is merely delegation of power residing solely in Congress); *Barnes*, 91 U.S. at 545 (D.C.'s power "is great or small according as the legislature shall extend or contract the sphere of its action."). Thus, an action by D.C. against the United States is plainly an action by the United States against itself.[7] This is doubly so as concerns a lawsuit seeking to vindicate federal sovereign power. Again, only the United States is

---

[7] That D.C. cannot sue the United States does not mean that *no* controversy is justiciable, since the United States may resort to traditional common law *controls* over an errant corporate entity. That is not a sovereign suing itself, but a sovereign using traditional causes of action to control a corporate municipality. *See, e.g.*, *Rex v. City of London*, 8 Cobbett's State Trials 1039, 1264–72 (K.B. 1683).

19

sovereign; and there can be only one United States. *See, e.g.*, *United States v. Providence Journal Co.*, 485 U.S. 693, 701 (1988) (finding "somewhat startling" the submission that here is more than one "United States" that may appear before this Court."); *In Re Sealed Case*, 146 F.3d 1031, 1031–33 (D.C. Cir. 1998) (Silberman, J., concurring in denial of rehearing en banc) (similar reasoning).

3.     To be sure, there are exceptions to the foregoing rules. But none of them apply here.

a.     D.C. has on occasion *sought* to sue the Federal Government. But in most of those instances, it was joined by private plaintiffs who independently had standing and thus the issue of D.C.'s standing was (somewhat pointedly) avoided. *See Banner*, 428 F.3d at 307 n.5; *Adams*, 90 F.Supp.2d at 45 n.12. And in a somewhat odd case where the *United States* initiated the litigation in the different context of a property dispute, the courts did not consider the question of standing (perhaps because the action was treated as an action via *assumpsit* to control a corporation by writ). *See United States v. District of Columbia*, 596 F.Supp. 725 (D. Md. 1984), *aff'd*, 788 F.2d 239 (4th Cir. 1986).

b.     As to the *ICC* line of cases, those cases appear to rest on two

20

rationales. First, *ICC* has generally been understood to turn on the fact that one surveys the named parties to determine the real parties in interest. *See, e.g., Barnes v. Kline*, 759 F.2d 21, 64 (D.C. Cir. 1984) (Bork, J., dissenting). Here, there is no question that D.C. is the real party in interest, so this rationale has no applicability.

Second, *ICC* and other cases routinely rest on the notion that independent agencies may sue each other by dint of fact that independent agencies under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), exist as though they are a floating Fourth Branch of Government that sits in parallel to the Executive and is not subject to full Presidential control. *See, e,g., SEC*, 568 F.3d at 997 (Kavanaugh, J., concurring); *Barnes*, 759 F.2d at 64 (Bork, J., dissenting). To be sure, there is some intuitive appeal to analogy here at first blush. The argument posits, in effect, that Home Rule establishes D.C. as a quasi-independent agency. But that analogy breaks down when the nature of D.C. is considered. It *does not* have a parallel dignity with the Executive Branch justiciable as a routine controversy. *Cf. Shell*, 605 F. Supp at 1082 (asking whether inter-agency litigation is of the type "traditionally justiciable"). Rather, it is entirely *subordinate*. Unlike with an independent agency, there is no need for a Court to referee a dispute

between "equals" because the United States's absolute control and supremacy *always* prevails in a dispute with a mere municipal corporation.[8]

**4.** The long-established municipal subdivision standing doctrine separately and independently precludes Article III standing here. As Justice Cardozo explained, "[a] municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." *Williams v. Mayor and City Counsel of Baltimore*, 289 U.S. 36, 40 (1933); *accord Aguayo v. Richardson*, 473 F.2d 1090, 1101 (2d Cir. 1973) (per Friendly, J.) ("The City lacks standing to assert constitutional claims against the State").

The same venerable rule applies to efforts by municipal corporations to sue their creators in State courts:

> Despite their contrary claims, the traditional principle throughout the United States has been that municipalities and other local governmental corporate entities and their officers lack capacity to mount constitutional challenges to acts of the State and State legislation. This general incapacity to sue flows from judicial recognition of the juridical as well as political relationship between those entities and the State. Constitutionally as well as a matter of historical fact, municipal corporate bodies—counties, towns and school

---

[8] Moreover, it is doubtful this line will survive the current Supreme Court Term as the Court is likely to overrule *Humphrey's Executor*. *See Trump v. Slaughter*, 146 S. Ct. 18 (2025).

districts—are merely subdivisions of the State, created by the State for the convenient carrying out of the State's governmental powers and responsibilities as its agents. Viewed, therefore, by the courts as purely creatures or agents of the State, it followed that municipal corporate bodies cannot have the right to contest the actions of their principal or creator affecting them in their governmental capacity or as representatives of their inhabitants.

*City of New York v. State*, 86 N.Y.2d 286, 289–90 (N.Y. 1995). This rule is of impeccable pedigree and general application. *See, e.g., Town of Mt. Pleasant v. Beckwith*, 100 U.S. 514, 524–25 (1879) ("Institutions of the kind, whether called cities, towns, or counties, are the auxiliaries of the State in the important business of municipal rule; but they cannot have the least pretension to sustain their privileges or their existence upon any thing like a contract between themselves and the legislature of the State, because there is not and cannot be any reciprocity of stipulation between the parties, and for the further reason that their objects and duties are utterly incompatible with everything partaking of the nature of compact.").

## D. The Original Public Meaning of the District Clause Supports This Conclusion.

The original public meaning of the District Clause (or Seat of Government Clause) strongly supports a rule that D.C. cannot sue the United States. As the D.C. Circuit explained in *Banner*:

The evident purpose of granting Congress authority over the District

23

was to provide the federal government a place where it would not be harassed or neglected by local interests. *See* The Federalist No. 43 (James Madison); 2 Joseph Story, Commentaries on the Constitution of the United States § 1219 (5th ed. 1891) (suggesting that Pennsylvania's refusal to defend the Continental Congress from an angry crowd of disbanded but unpaid Revolutionary War soldiers ultimately led to inclusion of the District Clause).

*Banner*, 428 F.3d at 309.  Also, the first mention of what became the District Clause at Constitutional Convention was grounded not only in this concern, but in a desire to avoid "disputes concerning jurisdiction."  James Madison, *Notes of Debates in the Federal Convention* 378 (1987 ed.) (remarks of Col. Mason).  As then-Judge Taft explained, this is why the Government of the District of Columbia is *necessarily* national:

> It was meet that so powerful a sovereignty should have a local habitation the character of which it might absolutely control, and the government of which it should not share with the states in whose territory it exercised but a limited sovereignty, supreme, it is true, in cases where it could be exercised at all, but much restricted in the field of its operation.  The object of the grant of exclusive legislation over the district was, therefore, national in the highest sense, and the city organized under the grant became the city, not of a state, not of a district, but of a nation.

*Gunther v. Wright*, 75 F. 742, 757 (6th Cir. 1896).  Thus, it is said that even when Congress "legislates for the District" it "acts as a legislature of national character."  *Neild*, 110 F.2d at 246, 250.  This is part and parcel of why under the Home Rule Act, the President retains complete control over the D.C.

24

National Guard (*see* D.C. Code §§ 49-301(a), 49-409, 32 U.S.C. § 314(b)) and has power to request "services" from the Metropolitan Police Department. D.C. Code § 1-207.40(a).

This demolishes the District Court's "injury to national control" theory. JA823–24. Even under D.C.'s hyper-aggressively pleaded case, the federal government is categorically *in control*. If the federal government wishes to exclude State National Guards, it has obvious power to do so—that is the very point of command-and-control arrangements about which D.C. so aggressively complains.

D.C.'s proposed rule of a "sovereign power" able to rush to Court, sue the entity that birthed it under the Constitution, and then demand one of the three branches of the federal government adjudicate any dispute of any sort it may have with the United States would do violence to this original public meaning in which national interest controls. This could give rise to a barrage of litigation. Anytime D.C. did not like an action taken by the federal government (which happens all the time), D.C. could immediately resort to litigation—potentially hamstringing the governance of the Capital via constant pitched battles at the courthouse. This stands the constitutional intention to create a District where the federal government would "exercise

25

exclusive Legislation in all Cases whatsoever," (U.S. Const., Art. I., § 8, cl. 17) on its head.  Indeed, we have seen this play out recently.  Because President Trump believes bold national action is necessary (and Congress agrees with him), these conflicts will likely continue and fester.  The normal structural incentives for cooperation, or for that matter, a more permanent and coherent solution derived from "the hurly-burly, the give-and-take of the political process between the legislative and the executive'" that served the Nation for well over 200 years are at risk of being vitiated.  *Trump v. Mazars*, 591 U.S. 848, 859 (2018) (quoting *Hearings on S. 2170 et al. before the Subcommittee on Intergovernmental Relations of the Senate Committee on Government Operations*, 94th Cong., 1st Sess., 87 (1975) (A. Scalia, Assistant Attorney General, Office of Legal Counsel)).  As the D.C. Circuit explained, in a related context, "[t]he Framers would naturally have expected that where tensions between local and national interests arose, *they could be resolved by Congress with due consideration for the latter.*"  *Banner*, 428 F.3d at 309 (emphasis added).

If there is power in an Article III Court to adjudicate this case, there will be more litigation, followed by still more litigation.  No longer will the political process resolve conflicts.  Indeed, depending on how the merits of

this case transpire, there may be extended judicial involvement and policing. *Cf.* Trans. of Hr'g at 58:3–14, *District of Columbia v. Trump*, No. 25-cv-2678 (ACR) (Aug 15, 2025) (contemplating continued judicial involvement). That is entirely inconsistent with the design and original public meaning of the District Clause, turning the seat of the national government into a tail wagging the dog.

## III. D.C. LACKS AUTHORITY TO BRING THIS ACTION.

1. Congress has limited D.C.'s power to litigate via granting only the power to "sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this Code." D.C. Code § 1-102.

This delegation does not extend to the District initiating litigation as a putative sovereign against the United States. That raises the questions of standing discussed above and runs contrary to the political subdivision standing doctrine.

If the Statute is susceptible of a construction that does not raise these serious constitutional questions of standing, then it should be adopted. *See* Scalia & Gardiner, *Reading Law* 197 (2012).

The statutory text is indeed broad in its general authorization to "sue," but it contains the modifier "not inconsistent with the Constitution and laws of the United States and the provisions of this Code." That modifier suggests that Article III's limitations are baked in as a matter of statutory construction and the law of municipal corporations. Put differently, the Statute only authorizes D.C. to "sue," if Article III permits the underlying action. But Article III denies this power here.

Additionally, the relevant statutory provision has been the law since 1878 and repeated construction by the Supreme Court never spotted or construed the the eyebrow-raising power asserted here by the District. *See* 20 Stat 102 (1878). Moreover, in 1878 (when the language was drafted), the application of Dillon's Rule—that grants of power to a municipal corporation must be express— would give "sue" a narrow construction that would exclude authority to bring suits foreclosed under the municipal-subdivision standing doctrine. *See* John F. Dillon, *Treatise on the Law of Municipal Corporations* 101–02 (1878). Doubly so with the limiting clause. Indeed, the Court was at pains *not* to construe a similar grant of authority in the 1871 Organic Act, 16 Stat. 419, as authorizing D.C. to legislate in an area that would likely be considered (and that the Court found) to be an unconstitutional regulation of

interstate commerce. *See Stoutenburgh v. Hennick*, 129 U.S. 141, 149 (1889) ("In our judgment congress, for the reasons given, could not have delegated the power to enact the third clause of the twenty-first section of the act of assembly . . . and there is nothing in this record to justify the assumption that it endeavored to do so, for the powers granted to the District were municipal merely."). And again, the historical record counsels against finding that the power to "sue" (as modified) extends to actions against the United States. *Cf. Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (courts should hesitate to find implied causes of action).

**2.** By the same token, D.C. certainly lacks a cause of action as to its free-standing constitutional claims premised on the District Clause. There is no basis whatsoever to think such relief has the requisite historical pedigree in courts of equity in Westminster Hall. *See Groupo Mexicano v. All Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).

## CONCLUSION

The judgement below should be vacated and this case remanded for dismissal for want of jurisdiction.

Dated:  April 8, 2025                Respectfully submitted,

29

<u>/s/ Samuel Everett Dewey</u>

SAMUEL EVERETT DEWEY
Chambers of Samuel Everett Dewey LLC
2200 12th Court North Apt. 609
Arlington VA  22201
(703) 261-4194
Email:  samueledewey@sedchambers.com


JEFFREY BOSSERT CLARK

The Oversight Project
211 N. Union St
Alexandria, VA 22314
Email:  jeff@itsyourgov.org

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the portions of the brief exempted by Fed. R. App. P. 32(f), this document contains 6,500 words.

2.    This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook typeface.

*/s/ Samuel Everett Dewey*

31

## CERTIFICATE OF SERVICE

The undersigned certifies that, on this 8th day of April 2026 I filed

the foregoing motion using this Court's Appellate CM/ECF system, which

effected service on all parties.

*/s/ Samuel Everett Dewey*